445 A.2d 529

**COMMONWEALTH of Pennsylvania**

v.

**Jerome MAJORANA, a/k/a James J. Majorana, Appellant.**

Superior Court of Pennsylvania.

Argued April 23, 1981.

Filed May 7, 1982.

Petition for Allowance of Appeal Granted Sept. 16, 1982.

212

Patrick J. Flannery, Assistant Public Defender, Wilkes-Barre, for appellant.

Joseph Giovananni, Assistant District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, WICKERSHAM, BROSKY, WIEAND, JOHNSON, MONTEMURO, POPO-VICH, DiSALLE and SHERTZ, JJ.

JOHNSON, Judge:

Appellant and two co-defendants were charged with Rape,[1] Indecent Assault,[2] Unlawful Restraint[3] and Criminal Conspiracy.[4] At a jury trial appellant [hereinafter James] and one co-defendant [hereinafter Gerald] were convicted of Criminal Conspiracy and Unlawful Restraint. The third defendant [hereinafter Richard] was convicted of all four crimes.

1. The Crimes Code, Act of December 6, 1972, P.L.1482, No. 334, § 1; 18 Pa.C.S.A. § 3121 (Purdon 1973).

2. 18 Pa.C.S.A. § 3126.

3. 18 Pa.C.S.A. § 2902.

4. 18 Pa.C.S.A. § 903.

This appeal by James is based on the assertion that the trial court erred in refusing to allow Richard to testify at the trial that he had engaged in consensual intercourse with the complainant earlier in the evening. The trial court refused to allow this testimony because the defendant had not filed a written motion and offer of proof of this evidence as he is required to do by the Rape Shield Law.[5]

The charges arose out of an allegation by the complainant [hereinafter Carol] whose testimony at trial showed that at approximately 10:40 p. m. on a Sunday, she came out of a dance which she had attended with a girlfriend; she saw Richard standing beside a car; the other two defendants were inside the car; Richard asked her where she was going and she replied that she was looking for her girlfriend; Richard responded that the girlfriend had left; he then took her by the arm and put her in the back of the car which drove off, with James driving, Gerald in front, and Richard and Carol in the back seat. Richard then removed Carol's jeans and panties and forcibly engaged in sexual intercourse with her, while Gerald held her down. Gerald then tried to climb over the seat in order to rape her, but desisted when she pushed him away.

5. 18 Pa.C.S.A. § 3104, as amended by the Act of May 18, 1976, P.L.120, No. 53, § 1, provides:

§ 3104. *Evidence of victim's sexual conduct*

(a) *General rule.*—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) *Evidentiary proceedings.*—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial.

If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

At about midnight, having been given back her jeans by James, Carol left the car when it pulled into the parking lot of a shopping center. She then saw another car approaching, and asked the couple inside it for help. They drove her to her home. From there she went to a hospital where she was examined. Tests were taken which indicated the presence of semen and live sperm in her vagina.

The testimony proposed by Richard, during the trial but at sidebar, and excluded by the trial court, was to the effect that Richard had in the past dated Carol and engaged in consensual intercourse with her, and in particular that earlier that same evening, at the dance, Carol had asked Richard to go for a walk, and that they had gone to a parking garage where they had engaged in consensual sexual intercourse in a waiting room. The Commonwealth objected to this testimony on the grounds that under the Rape Shield Law it was irrelevant and inadmissible, particularly in view of the defendant's failure to file a written motion pursuant to 18 Pa.C.S.A. § 3104(b).[6]

The trial court sustained the Commonwealth's objection to any testimony about Carol's alleged prior sexual relationship with Richard. The court ruled that the defense could bring in whatever defense they had as to what happened in the car, but that they could not bring in "any evidence of specific acts of unchastity between the Defendants and the victim." In excepting to the court's ruling, the defense stated that they wanted to introduce "the fact of the intercourse as explanation as how the sperm and the semen got into the vagina."

Trial resumed. All three defendants testified. Richard testified in some detail to his alleged dates with Carol in the past. He also testified to Carol's having asked him to go for a walk at the dance and to their having gone into the parking garage. Richard testified that after leaving the

6. 18 Pa.C.S.A. § 3104(b), see note 5 supra, provides that a defendant who proposes to offer evidence of the alleged victim's past sexual conduct with him must file a written motion and offer of proof at the time of trial.

garage he and Carol sat in the back seat of James' car for a while playing a tape recorder; that James then returned to the car and became annoyed at their using the tape recorder; and that after that the three defendants and Carol drove around the town and on to the highway. Richard's testimony continued to the effect that there was some animosity between James and Carol which resulted in Carol's being asked to leave the car, which she ultimately did after they had driven back into town.

The other two defendants testified to having seen Carol talk to Richard at the dance, to having seen her leave the dance with him, and then to her sitting in the back seat of James' car with Richard. All three testified that they drove around with Carol in the car until she left the car at James' request. They all denied that any sexual act occurred in the car. No evidence of any sexual activity was introduced at the trial beyond Gerald's volunteering on direct examination that his brother Richard "said that he was having sexual relations with" Carol. This statement was duly objected to by the Commonwealth, and the jury was instructed to disregard it.

Appellant's contention is that the Rape Shield Law was erroneously applied to this case. He concedes that his offer of proof as to the earlier dating and sexual relationship was objectionable as past sexual conduct excluded by the statute. However, he argues that Richard's "proffered testimony was not concerning the victim's past sexual conduct with him but her consent to his actions as to the act in question. The . . . offer was that he and the victim had gone to the United Penn Parking Lot on that evening and that is where the intercourse took place. The purpose of the testimony was not to show victim's past sexual conduct but to negate the element of force." Brief for Appellant at 9.

Thus, appellant argues *on appeal* that consent was in issue.[7] A careful review of the notes of testimony belies this

7. Viewed from a procedural standpoint, the statute appears to be clearly written to allow an exception *only* where consent of the alleged victim is *at issue.* The term "at issue" is generally under-

argument. Nowhere did any of the defendants raise the issue of consent. Their testimony was a *denial* of the act complained of. Their proffered testimony was of an act which occurred *at a different time, in a different place,* and *in different circumstances* from those alleged by Carol.

What Richard said occurred (in his proffered, but excluded, testimony) and what Carol said occurred are not the same event. They are two separate incidents, whether both, either, or neither in fact occurred. Richard says that at one point in the evening Carol and he went for a walk and had sexual intercourse in a parking garage. Carol says that Richard put her in the car and, while James drove the car and Gerald held her down, Richard raped her. The charges were specifically for an act in the car. The prosecution was required to prove beyond a reasonable doubt that Carol was raped in the car. As testimony of a prior and separate incident Richard's testimony was barred by the Rape Shield Law unless the defendants placed consent at issue and filed the § 3104(b) motion.

Appellant also argues that the testimony of the parking garage incident was needed to explain the presence of the

stood to mean the stage in the pleadings where there is affirmation on one side and denial on the other. *See Black's Law Dictionary,* Fifth Edition (1979) at 114. In this criminal context, the legislature has provided ample guidance as to its meaning in the use of "at issue". Subsection (b) of the Rape Shield Law expressly requires *firstly* that a defendant—in order to gain use of the narrow exception governing introduction of past sexual conduct—must file a written motion and offer of proof, and *secondly* the court must determine that the written motion and offer of proof are *sufficient on their faces.* Only *after* such submission and preliminary review by the court is the question of *consent* of the alleged victim *at issue.*

The exception to the bar of the Rape Shield Law is evidence of the "victim's past sexual conduct with the defendant." There is no allegation of Carol's past sexual conduct with James Majorana. He is therefore not "the defendant" referred to in that part of 18 Pa.C.S.A. § 3104(a). But we do not here consider whether James may therefore escape the bar of the Rape Shield Law. Richard Nichol, who is "the defendant" who sought to testify as to Carol's past sexual conduct with himself, did not comply with 18 Pa.C.S.A. § 3104(b).

semen and live sperm in Carol's vagina.[8]  If there was semen deposited in Carol by Richard, as opposed to by a stranger,[9] as a result of an earlier consensual sexual act, the same rule applies, that there was an alleged prior consensual act and a § 3104(b) motion was required.[10]

If we were to adopt the argument of the appellant in this case, that the Rape Shield Law does not apply, the effect of such a decision would be that where a defendant in a rape case denies the alleged rape, but offers evidence of other recent sexual activity between himself and the complainant, that evidence would be admissible on the theory that it was not evidence of "past sexual conduct" within the meaning of the Rape Shield Law.  Defendants in rape cases would be released from the constraints of the statute.  Complainants

**8.** The statute excludes testimony sought to be introduced for that purpose. *See Commonwealth v. Duncan*, 279 Pa.Super.Ct. 395, 421 A.2d 257 (1980), where this court held that a statutory rape victim's prior sexual conduct was not admissible to show her bias against the defendant.

In the case before us, defense counsel cross-examined the expert medical witnesses as to how long sperm could live.  They testified that sperm could live up to six or eight hours.  The jury could then draw whatever inferences were suggested by this testimony; for example, that she was not raped as she claimed, and that the sperm came from another sexual act that evening.

**9.** Commentators have raised the question of the need to explain the presence of semen (or venereal disease or pregnancy) in an alleged rape victim where the defendant, denying the charge, claims that this was the result of the victim's sexual activity with another man.  *See* Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U.Pa.L.Rev. 544, 584–85 (1980); Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum.L. Rev. 1, 57–58 (1977); Rudstein, *Rape Shield Laws: Some Constitutional Problems*, 18 Wm. & Mary L.Rev. 1, 39 (1976); Note, *Indiana's Rape Shield Law: Conflict with the Confrontation Clause?* 9 Ind.L. Rev. 418 (1976).

**10.** In situations such as that presented by this case, the procedure should be to file the § 3104(b) motion, even though the type of situation which immediately jumps to mind as being covered by the statute is that where a defendant concedes that the sexual act complained of did in fact occur, but insists, contrary to the allegation of the complaining witness, that the act was consensual.  The fact that the complaining witness had previously consented to past sexual conduct with the defendant was what would have made him think she consented on the occasion in question.

would be exposed to the harassment of inquiry into their sexual behavior and to the likelihood of a jury biased against them and for the perpetrator of the alleged crime.[11]   A clear directive of the legislature would thereby be flouted.

The holding urged by appellant and by the dissenting opinion would emasculate the Rape Shield Law.   The statute is a clear command of the legislature.   The *raison d'être* of rape shield statutes is partially to correct the manner in which our criminal justice system has approached the victim of a sexual assault.   *Commonwealth v. Strube*, 274 Pa.Super.Ct. 199, 204, 418 A.2d 365, 367 (1979), *cert. denied*, 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980).   The statute also gets rid of the covert notion that a woman who says yes once cannot then be raped.   *Id.*, 274 Pa.Super. at 205–209, 418 A.2d at 368–370.

Accordingly, we hold that Richard's proposed testimony of the consensual intercourse in the parking garage earlier on in the evening was evidence of prior sexual conduct within the meaning of the statute, and is barred.   Had the defendants chosen to place consent at issue, the statute sets forth the procedure for so doing.   18 Pa.C.S.A. § 3104(b).   However, as the defendants chose merely to deny the act complained of, and not to follow the statutory procedure, the statute applies in this situation to bar the admission of this testimony altogether.

The judgment of sentence is affirmed.

MONTEMURO, J., files a dissenting opinion in which SPAETH, CAVANAUGH, WIEAND and POPOVICH, JJ., join.

DiSALLE and SHERTZ, JJ., did not participate in the consideration or decision of this case.

11.   *See* Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U.Pa.L.Rev. 544 (1980); Rudstein, *Rape Shield Laws: Some Constitutional Problems*, 18 Wm. & Mary L.Rev. 1 (1976); Note, *The Victim in a Forcible Rape Case: A Feminist View*, 11 Am.Crim.L.Rev. 335 (1973).

MONTEMURO, Judge, dissenting:

I must respectfully dissent. The Rape Shield Law, 18 Pa.C.S.A. § 3104, reads as follows:

(a) General rule.—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) Evidentiary proceedings.—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and other proof at the time of trial. If at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an *in camera* hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

The Rape Shield Law governs the admissibility of evidence relating to the alleged victim's past sexual conduct. The facts of this case pertain to the exception in the statute which allows testimony of the victim's past sexual conduct with the defendant when consent is at issue. The threshold question therefore is whether Richard Nichol's version of the events that took place in the garage constituted evidence of past sexual conduct, thereby placing him within the confines of the statute.

Richard proposed to testify that at one point in the evening, about two hours before Carol's estimation of intercourse, he and Carol went for a walk and had sexual intercourse in a nearby parking garage. Richard's version included the CYO dance as a backdrop to the alleged event, and the parking garage was in reasonable proximity to the car and the dance. The majority places great emphasis on

the fact that the "proffered testimony was of an act which occurred at a different time, in a different place, and in different circumstances from those alleged by Carol." Majority Opinion at 531–532. This strong statement is at best hairsplitting and at worst places undue weight on the testimony of Carol.[1] For the purposes of determining what constitutes "past" sexual conduct, it would seem that the majority's interpretation is much too strict and hypertechnical. A difference of two hours, *in the context of the facts of this case*, does not, in my opinion, render Richard's account a past act. The doctor's testimony established that Carol did in fact have sexual intercourse sometime that evening. Both Richard's and Carol's accounts include an act of sexual intercourse. Both accounts occurred generally under the same circumstances. Richard's proposed testimony was not to be used to show that Carol was inclined to consent to having intercourse at a later time, but as a rebuttal to her version of the act of intercourse and as an explanation for the existence of the sperm in her vagina. Based on the facts of the case, I would conclude that Richard's version was contemporaneous with Carol's version for the purpose of defining past sexual conduct under the Rape Shield Law.[2] I would therefore conclude that the lower court erred in excluding the testimony, and accordingly, grant a new trial.[3] My analysis would not involve the application of a *per se*

1. We must keep in mind that the discussion should focus on *admissibility* not credibility.

2. The majority states that the prosecution specifically was required to prove beyond a reasonable doubt that Richard raped Carol in the car, and they treat any other version as a separate incident. The majority's analysis takes the allegation as a fact and then proceeds to point out how Richard's version differs from Carol's. We are not determining sufficiency of the evidence. We are determining *admissibility* of the evidence and for that purpose we should not base a decision on fine lines as to matters of credibility. The majority states, "They are two separate incidents, *whether both, either, or neither in fact occurred*." Majority Opinion at 531 (Emphasis added). The majority's analysis belies that supposition.

3. Because the error may have contributed to the conviction, the error was not harmless. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

rule regarding a time differential which would trigger coverage by the statute. Trial courts would, on an *ad hoc* basis examine both the time interval, and all the particular circumstances in their determination of whether proposed testimony would or would not be considered as past conduct.

Although, under the facts of this case, my interpretation of "past sexual conduct" would in and of itself require a reversal, I find it necessary to address the majority's discussion of when "consent is at issue". Because of the contemporaneousness of the two versions, I would find that consent was at issue. Even though Richard testified that intercourse did not occur in the car (denial vs. consent), he would have testified that he had consensual intercourse with Carol that same night. The majority states that consent was not at issue. They reason that because Richard denied the act in the car, and because his version took place at an earlier time and under different circumstances, that consent was not at issue on the night in question. They then go on to say that he could have placed consent at issue simply by raising it pretrial. This conclusion is not only contradictory, but it ignores the wording in the statute; even worse, it accomplishes exactly what the majority states they are trying to avoid—the emasculation of the Rape Shield Law. The majority comments upon the meaning of "consent at issue".

Viewed from a procedural standpoint, the statute appears to be clearly written to allow an exception *only* where consent of the alleged victim is *at issue*. The term "at issue" is generally understood to mean the stage in the pleadings where there is affirmation on one side and denial on the other. *See Black's Law Dictionary*, Fifth Edition (1979) at 114. In this criminal context, the legislature has provided ample guidance as to its meaning in the use of "at issue". Subsection (b) of the Rape Shield Law expressly requires *firstly* that a defendant—in order to gain use of the narrow exception governing introduction of past sexual conduct—must file a written motion and offer of proof, and *secondly* the court must determine that the written motion and offer of proof are *sufficient on*

*their faces.* Only *after* such submission and preliminary review by the court is the question of *consent* of the alleged victim *at issue.*

Majority Opinion, at 531 n.7 (Emphasis in original).

I fail to see where the legislature has provided "ample guidance" as to its meaning in the use of "at issue". Subsection (b) of the Rape Shield Law prescribes when the motion is made and how the motion is presented. Similarly, Black's Law Dictionary adds nothing. Lack of consent is an element of rape.[4] It is necessarily an issue. There is always affirmation on one side and denial on the other.

The majority later comments:

In situations such as that presented by this case, the procedure should be to file the § 3104(b) motion, even though the type of situation which immediately jumps to mind as being covered by the statute is that where a defendant concedes that the sexual act complained of did in fact occur, but insists, contrary to the allegation of the complaining witness, that the act was consensual. The fact that the complaining witness had previously consented to past sexual conduct with the defendant was what would have made him think she consented on the occasion in question.

Majority Opinion at 532 n.10.

The holding urged by appellant and by the dissenting opinion would emasculate the Rape Sheild Law. The statute is a clear command of the legislature ...

Majority Opinion at 532.

The majority's conclusion that a defendant may avail himself of the exception of the Rape Shield Law even though he denies the act complained of renders the phrase in the statute, "where consent of the alleged victim is at issue," either totally meaningless or redundant. My perception of the phrase is the one that the legislature most certainly envisaged; that the testimony may be brought in only when the defendant admits the act of intercourse, but claims that

4. 18 Pa.C.S.A. 3121.

the victim consented.[5]  See *Commonwealth v. Strube*, 274 Pa.Super. 199, 418 A.2d 365 (1979), cert. denied 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980).

The majority has tortured the facts and has erroneously applied the law to affirm the conviction in this case.  In doing so, they have simply made bad law.

I therefore dissent.

**5.**  Here Richard is claiming that he had consensual intercourse with Carol, albeit at a different place and at a different time.  Under our analysis, Richard's version of intercourse was contemporaneous with Carol's version for the purpose of placing consent at issue.  She says, and he denies, that it happened in the car.  Clearly, if he had sought to introduce past sexual conduct with Carol allegedly occurring on their previous dates, the § 3104(b) motion would have been necessary.