486 A.2d 233

**Herbert Mack TESTERMAN, Sr.**

v.

**STATE of Maryland.**

No. 382, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Jan. 9, 1985.

Isaac S. Kershner, Assigned Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Joseph I. Cassilly, State's Atty. for Harford County and Jay E. Robinson, Asst. State's Atty. for Harford County, Bel Air, on brief), for appellee.

Argued before ADKINS, ALPERT and ROSALYN B. BELL, JJ.

ALPERT, Judge.

In this appeal we are called upon to decide, among other things, what evidence Maryland's Rape Shield statute [1] excludes. The statute provides, in relevant part:

(a) *Evidence relating to victim's chastity.*—Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for commission of a rape or sexual offense in the first or second degree. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if the judge finds the evidence is relevant and is material to a fact in issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value, and if the evidence is:

(1) Evidence of the victim's past sexual conduct with the defendant....

In the case *sub judice* the appellant Herbert Mack Testerman, Sr. was convicted by a Harford County jury of second

---

1. Md.Code Ann. art. 27, § 461A (1957, 1982 Repl.Vol.).

degree rape, fourth degree sexual offense and false imprisonment. The appellant does not deny that he had intercourse with the victim on February 5, 1983. He contends, however, that the intercourse was consensual.

Appellant and the victim had been acquainted with each other for approximately fifteen years. On February 5, 1983, appellant met the victim unexpectedly at the White Horse Bar in Cecil County. They had a drink with the victim's niece and a friend at that bar and decided to go elsewhere. The niece and friend left the victim with the appellant and his son; they were to meet at the Hideaway Lounge in Harford County. Appellant testified that when he, his son and the victim arrived at the second bar, the niece and friend were not there. In the meantime, the victim had been, according to appellant's testimony, drinking heavily and appeared to be getting sick. Appellant's son got out of the car as soon as the victim got sick on the parking lot of the Hideaway Lounge. Appellant asserted that he drove the victim around with the expectation that the fresh air would make her feel better and when she professed to be tired, they drove to the Tuck-A-Way Motel. When they got to the motel, appellant avows that they got undressed and were having consensual intercourse when the victim suddenly stopped and declared that "she was not on the pill anymore" and might get pregnant. According to appellant, they left the motel, picked up his son at the Hideaway Lounge and drove the victim home around 1:30 a.m.

The victim, on the other hand, while acknowledging she and appellant had known each other for some fifteen years, testified that when they left the White Horse Bar they dropped appellant's son off somewhere enroute to the Hideaway Lounge. She claims the appellant then stopped the car on Stepney Road in Harford County and forcibly detained her. The appellant then, allegedly, struck her and forced her to engage in fellatio and sexual intercourse.

The appellant, seeking reversal of his conviction, contends that:

I. The trial court erred in excluding any evidence of prior sexual conduct between himself and the victim;

II. He should have been found not guilty of second degree rape because the jury's verdict on that count was non-unanimous;

III. The trial court erred in excluding portions of a conversation between appellant and the victim's boyfriend;

IV. The trial court improperly limited the scope of cross-examination with regard to the victim's psychiatric condition;

V. The trial court improperly admitted a hospital report indicating that the victim had had a hysterectomy sometime prior to February 5, 1983; and

VI. The false imprisonment conviction should have been merged with the rape conviction.

We agree with appellant as to the first of these alleged errors and reverse. We will, however, address those issues which may surface upon remand.

I. *Maryland's Rape Shield Statute*

Appellant claims that he and the victim have had a series of one night stands over a period of several years. He sought to introduce evidence of this through: (1) the testimony of several witnesses who inadvertently caught appellant and the victim in compromising situations; (2) his own testimony; and (3) the cross-examination of the victim.

Appellant's counsel proffered that the evidence was relevant to show consent and could be used to impeach the victim since she testified that they had never even dated without another couple, let alone had any prior sexual relationship. The trial judge, however, relying on Maryland's Rape Shield Statute, excluded the evidence of prior sexual contact because he deemed it irrelevant. At the

conclusion of an in camera hearing conducted pursuant to Art. 27, Sec. 461A(b), the court stated:

I do not think there's any relevance on its face. The fact there may have been past consent has nothing whatever to do with whether there was consent at the time, and I think the only thing to do is just wait and see how the cards fall.

Now, I'm not—it may come in by way of impeachment, but—and that's in a very limited fashion. The shield law was originally—was the statutory response to the problem of rape cases where the victim's character gets dragged through the mud, which has no legal significance as to whether or not the victim gave consent at the time in question, but certain exceptions were made where the—the key words in the statute are relevant and material, and just because they had sex in the past doesn't make it relevant and material in this case.

So that's going to be my ruling, so let's go in there.

During cross-examination appellant's counsel attempted to question the victim about her prior sexual experience with appellant. The court sustained the prosecutor's objection and said:

Well, I'm going to sustain the objection. I do not see the relevance.

The issue is consensual intercourse, and the fact consent was given some time in the past, whether it was the day before, a minute before or two years before, it doesn't logically follow consent was given at the time in question, and I believe the shield statute requires that I make a finding as to relevance and materiality in the case. Consequently, I will sustain the objection.

We disagree.

■ The test for admissibility under the Rape Shield Statute is first, one of relevancy. Second, the evidence must be material to a fact in issue and, lastly, its probative value must not be outweighed by its inflammatory prejudicial nature. In the instant appeal the victim's consent was

put at issue. The defense made the victim's alleged prior sexual encounters with appellant *material* in that, if believed, they may "tend to influence the trier of fact because of [their] legal connection with the issue." *Breedon v. Md. Dept. of Ed.,* 45 Md.App. 73, 84 n.15, 411 A.2d 1073 (1980). The issue was her consent on the 5th of February, 1983.

■ We specifically reject any notion that once consensual sex has been shown, any subsequent sexual activity, *ipso facto,* implies consent. The sensitive question of the relevancy of the victim's past sexual conduct with the defendant must be decided on an *ad hoc* basis. Under the facts and circumstances of this case, where the appellant contends that he and the victim engaged in a series of amicable and amorous encounters over a period of years, the relevancy of this evidence is, we believe, beyond question. Evidence is relevant if it "tend[s] to either establish or disprove [issues]." *Kennedy v. Crouch,* 191 Md. 580, 585, 62 A.2d 582 (1948). If the evidence is intended to and does describe or explain the facts and circumstances of the case, it is admissible. *Id.*

We repeat, the issue here is one of consent; evidence of the victim's prior sexual contact would tend to prove appellant's explanation of the events as being of a consensual nature. *See Marion v. State,* 267 Ark. 345, 590 S.W.2d 288 (1979) (evidence of prior relations with the accused was admissible); *Bobo and Forrest v. State,* 267 Ark. 1, 589 S.W.2d 5 (1979) (evidence that the parties had had prior relations over a period of eighteen months held to be admissible); *Brown v. State,* 264 Ark. 944, 581 S.W.2d 549 (1979) (evidence that the parties had had prior relations once or twice maybe three years ago held to be admissible); Annot., *Rape—Complainant's Prior Sexual Acts,* 94 A.L. R.3d 257, 287. *But see People v. Hastings,* 72 Ill.App.3d 816, 28 Ill.Dec. 683, 390 N.E.2d 1273 (1979); *State v. Boyd,* 643 S.W.2d 825 (Mo.App.1982). In states where Rape Shield Statutes have been enacted, evidence of the victim's prior sexual contact with the accused is admissible subject

to the restrictions of the particular statute. *See Wooten v. State,* 361 So.2d 1192 (Ala.Cr.App.1978); *State v. Small,* 276 Ark. 26, 631 S.W.2d 616 (1982); *State v. Domangue,* 350 So.2d 599 (La.1977); *Commonwealth v. Grieco,* 386 Mass. 484, 436 N.E.2d 167 (1982); *People v. Williams,* 95 Mich.App. 1, 289 N.W.2d 863 (1980); *State v. Boyd,* 643 S.W.2d 825 (Mo.App.1982) (reasonable contemporaneousness required); *State v. Crisp,* 629 S.W.2d 475 (Mo.App. 1981) (same); *State v. Graham,* 58 Ohio St.2d 350, 390 N.E.2d 805 (1979); *Commonwealth v. Majorana,* 299 Pa. Super. 211, 445 A.2d 529 (1982). Even where no statute exists, case law in many jurisdictions permits this evidence. *See United States v. Kasto,* 584 F.2d 268 (8th Cir.1978); *Smiloff v. State,* 439 P.2d 772 (Alaska 1968); *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976); *McLean v. United States,* 377 A.2d 74 (D.C.App.1977); *Huffman v. State,* 301 So.2d 815 (Fla.App.1974); *Thomas v. State,* 234 Ga. 635, 217 S.E.2d 152 (1975); *State v. Bell,* 283 N.C. 472, 196 S.E.2d 510 (1973).

▇▇▇▇ Lastly, in assessing the inflammatory or prejudicial nature of the prior sexual conduct, in order to weigh it against its probative value, the trial judge must determine whether "its value [is] worth what it costs..." *Weiner v. State,* 55 Md.App. 548, 555, 464 A.2d 1096 (1983). It is obvious that the legislature was concerned with the inflammatory or prejudicial effect upon the victim.[2] Naturally, that effect will vary from case-to-case, from person-to-person. But, "[w]eighing the inflammatory nature of evidence against the probative value lies within the sound judicial discretion of the trial court ..." *Kemp v. State,* 270 Ark.

---

2. As noted in an excellent discussion of the legislative history of this section, 7 U.Balt.L.Rev. 151, 156–59, one witness who testified before the Senate Judicial Proceedings Committee complained that:

> For too long, the victim has been subjected to the embarrassment and harassment of a defense attorney's attempt to discredit her charge by questions designed to show that because she consented to sexual relations in the past, she must have consented in the situation at issue.

835, 606 S.W.2d 573, 575 (1980). Since the trial judge never passed the point of relevancy, he never had the opportunity to exercise that discretion. Now that we have determined that the subject evidence, under the circumstances herein, is relevant, the trial court on remand must exercise its discretion in weighing its inflammatory or prejudicial nature against its probative value.

## II. *Non-Unanimity of Jury Verdict*

After announcing its verdict, the jury was polled pursuant to a request under former Maryland Rule 759.[3] Appellant contends, on appeal, that the polling revealed that six jurors did not concur with the decision to find him guilty of second degree rape.

A review of the record indicates that the verdict sheet was passed to each juror as they were polled. The court clerk, when polling the jury, inquired of the first six jurors if they found appellant guilty of second degree rape, to which each responded in the affirmative. When the clerk queried the other six jurors, however, they were asked if they found appellant *not* guilty of second degree rape; each also responded in the affirmative. At the time neither counsel nor the judge noticed the clerk's error. Judge Cameron did, however, notice that the process was somewhat confusing and tedious; he advised the jury that they could, if they desired, return to the jury room if anyone questioned the verdicts reached. The jury declined.

It is obvious that this was a clerk's error. Consequently, it is unlikely that this will occur again in a retrial. We would, however, caution the court clerk to be more careful in polling a jury. It is imperative in order to avoid a confusing situation, such as the one presented herein, that court clerks be consistent and accurate in polling a jury.

---

**3.** This rule now appears in substantially the same form at Maryland Rule 4–327(d).

### III. *Conversation With Victim's Boyfriend*

Appellant attempted to introduce evidence of the substance of a conversation between himself and the victim's boyfriend the night before the alleged rape occurred. The conversation, according to appellant, concerned the boyfriend's inquiry into whether the victim had ever engaged in fellatio with appellant.

■ These statements are obviously hearsay. They concern out of court statements offered to prove the truth of the matters asserted, *i.e.*, that the victim had previous encounters with appellant. They are, thus, inadmissible absent an exception to the hearsay rule of exclusion. We can, however, find no exception which would allow the evidence notwithstanding its apparent relevancy. The state of mind exception is not applicable because we are not concerned with the state of mind of the victim's boyfriend, the declarant. Nor can the evidence be admitted as reflecting the state of mind of the victim. *See Gray v. State*, 53 Md.App. 699, 714, 456 A.2d 1290 (1983).

### IV. *Victim's Psychiatric History*

During cross-examination of the victim, appellant sought to elicit from her the fact that she had been hospitalized several times for mental disorders. The State objected and a bench conference ensued. Appellant's counsel proffered that the victim had been hospitalized in 1977 for schizophrenia. The court, however, precluded these questions pending further proffer. Attempts were then made to identify the exact nature of the victim's hospitalization. The court and counsel consulted hospital records which indicated that the victim had entered Fallston General Hospital in Bel Air, Maryland, on May 27, 1977; she was released a week or so later. While there she was diagnosed "Schizophrenia. Schizo-defective type depressed." Appellant's counsel made no attempt to subpoena a physician to explain this diagnosis. Judge Cameron then concluded that this evidence was altogether inadmissible.

■ Appellant is correct when he argues that evidence of a witness's psychiatric history is admissible if relevant. In *Reese v. State*, 54 Md.App. 281, 458 A.2d 492 (1983), we held that evidence of a witness's psychiatric history is admissible if it would shed light on the witness's credibility. *Id.* at 288–89, 458 A.2d 492. The particular disorder must be one that would have affected the witness's credibility such as memory, observation and exaggeration. We cautioned in *Reese* that:

> [i]n determining the relevance of an inquiry into a witness's psychological instability, there is some room for discretion such as defining whether the particular disorder affects factors of credibility like memory, observation, exaggeration, imagination, etc. But even that limited sphere is further restricted by the weight of the evidence so indicating. The proffer need not be that proof beyond a reasonable doubt, or even by a preponderance of evidence, will show that such disorder is or was prevalent. It need only show that inquiry is likely to so divulge such a defect in the witness.
>
> The trial judge in liberally permitting a broad scope of credibility inquiry must balance not only the waste of judicial time factor (as was implicit here) against the value of exploration, but must take particular care not to permit annoying, harassing, humiliating and purely prejudicial attacks unrelated to credibility. Like bad acts, not every disorder is relevant to a witness's credibility.

54 Md.App. at 289–90, 458 A.2d 492.

■ We observe from the record in this case that the victim was allegedly suffering from schizophrenia. We note, however, no further medical explanation was ever solicited. There was no evidence to show that this type of mental disorder, schizophrenia, was one that would affect the victim's credibility. Consequently where, as here, there was little explanation of the nature of the disorder, there was no abuse of discretion in the court's refusing to permit the cross-examination.

### V. *Victim's Hospital Records*

Appellant also claims error in admitting copies of the victim's hospital records indicating she had a hysterectomy some years previous to this incident. We note from the record that this evidence was admitted during cross-examination of the appellant. The State's Attorney engaged in the following colloquy with appellant:

Q. In the motel, Mr. Testerman, while you claim you were having sexual intercourse with Brenda, you say she suddenly jumped off of you, saying she was not taking the pill anymore and she might get pregnant.

A. That's right.

Q. Are you aware that she's had a hysterectomy?

A. No, I was not.

Q. But you are now.

A. I was told, yes.

MR. ROBINSON: Your Honor, I would offer the Harford Memorial Hospital records to that effect as State Exhibit Number—

THE CLERK: Number '5'.

MR. ROBINSON: —Number '5'.

MS. COLEMAN: I would object, your Honor.

THE COURT: Why?

MS. COLEMAN: It doesn't prove or show what he knew about whether or not—

THE COURT: Well, that's not what it's offered for, so I'm going to overrule the objection.

I presume it's properly authenticated?

MR. ROBINSON: Your Honor, it's a Xerox copy obtained by the deputy. That's all I can say about the authenticity.

MS. COLEMAN: Xerox copies of what?

MR. ROBINSON: Obtained by the investigating officer.

THE CLERK: State's Exhibit Number '5' accepted into evidence.

Appellant does not contest the manner in which the report was introduced; however, we note that it was introduced without a witness testifying to its authenticity. The State relies upon *Gregory v. State,* 40 Md.App. 297, 391 A.2d 437 (1978) to argue that this was properly admitted. This is incorrect. Although this Court in *Gregory* acknowledged that the hospital record was admissible as a business record, we never discussed its admissibility as a public record under Md.Cts. and Jud.Proc.Code Ann. § 10–204. 40 Md.App. at 305, 391 A.2d 437. While a witness is not necessary to authenticate a public record, one is required to authenticate a business record.

■ The appellant claims that this evidence is irrelevant. We disagree. We note that it does tend to indicate that the victim would not have said what appellant alleges she said on the occasion in question, *i.e.,* that she had to stop because she was no longer on the pill and might get pregnant. The evidence is not impeachment evidence, however. Appellant did not claim to know that the victim had a hysterectomy. In fact, he acknowledged at trial that he had only recently learned of the operation. Admitting the record at this juncture does nothing to attack appellant's credibility. Notwithstanding the court's discretionary power to vary the order of proof, *see Kanaras v. State,* 54 Md.App. 568, 460 A.2d 61 (1983), we note that this is rebuttal evidence and as such is properly admissible at that time.

### VI. *Sentencing*

Lastly, appellant argues that his conviction for false imprisonment and rape should have merged and that it was error to sentence him, albeit concurrently, for both offenses. The appellant is correct.

■ If upon retrial the evidence indicates the victim was only detained for a period of time sufficient to accomplish the rape, the doctrine of merger applies. We said, in *Hawkins v. State,* 34 Md.App. 82, 92, 366 A.2d 421 (1976),

*cert. denied,* 279 Md. 683 (1977) that under these circumstances the offenses should merge and the false imprisonment conviction, being the lesser offense, merges into the rape conviction.

JUDGMENTS REVERSED; CASE REMANDED FOR NEW TRIAL; HARFORD COUNTY TO PAY THE COSTS.