472 A.2d 501

**Lawrence Waddell SMART**

**v.**

**STATE of Maryland.**

**No. 815, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 12, 1984.

128

David P. Sutton, Assigned Public Defender with whom was Alan H. Murrell, Public Defender, on brief, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Arthur A. Marshall, Jr., State's Atty. for Prince George's County and Robert H. Harvey, Asst. State's Atty. for Prince George's County, on brief, for appellee.

Submitted Before MOYLAN, ALPERT and BELL, JJ.

ALPERT, Judge.

Lawrence Waddell Smart, appellant, was tried and convicted by a jury in the Circuit Court for Prince George's County (Taylor, J., presiding) of the first degree murder of Kathleen Talbot Campbell. On appeal, appellant argues that he was denied his constitutional right to a speedy trial and that the trial judge committed reversible error by refusing to permit appellant's counsel to probe extensively the psychiatric history of State witness Larry Odell Smart, *appellant's twin brother,* on cross-examination.

## I. SPEEDY TRIAL

### A. *Chronology of Events*

On December 15, 1979, Dr. Richard Talbot, Campbell's brother, entered Campbell's apartment and discovered she was missing. The apartment was in disarray and several items were missing. After notification by Dr. Talbot, the Prince George's County Police Department commenced its

investigation to locate Campbell. Police investigation during the next six months revealed that Campbell had been living in the same apartment with appellant. Efforts to locate appellant were unsuccessful. Thereafter, Campbell's body was discovered and a warrant for appellant's arrest was issued on June 17, 1980. Assiduous police investigative techniques over the next sixteen months failed to bring appellant to justice. Interviews were conducted and reconducted; addresses were checked and rechecked; a national search ensued.

On October 19, 1982, appellant was arrested for disorderly conduct in the Washington Metro subway by a Washington Transit Authority Police Officer. A computer check of appellant's name, social security number, and date of birth revealed the outstanding arrest warrant. Appellant was taken into custody. On November 3, 1982, appellant was indicted for first degree murder and theft and trial was set for February 22, 1983.

### B. *Pre-Trial Hearing*

Appellant filed a motion to dismiss the indictments, alleging that he had been denied his constitutional right to a speedy trial. The matter came on for hearing on April 18, 1983 before Judge Taylor. Finding that the 34 month delay between the issuance of the arrest warrant and the motion hearing was of constitutional dimension, Judge Taylor applied the well-known four-factor test articulated by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Judge Taylor concluded that appellant had not been denied his speedy trial right.

### C. *The Law*

■ The constitutional right to a speedy trial is an amorphous one and it is "impossible to determine with precision when the right has been denied." *Barker v. Wingo, supra* at 521, 92 S.Ct. at 2187. Consequently, each case must be independently examined to determine whether a criminal accused has been denied this right. We scrutinize the inter-

action of four factors to make our determination: (1) length of delay; (2) reason for delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192.

■ A threshold consideration is whether the delay is deemed to be of constitutional dimension. If the delay does not meet this standard, there is no need to proceed to the four-factor test. *State v. Lawless,* 13 Md.App. 220, 229–32, 283 A.2d 160 (1971), *cert. denied,* 264 Md. 749, *cert. denied,* 409 U.S. 855, 93 S.Ct. 192, 34 L.Ed.2d 99 (1972). At the hearing below the State conceded that the 34-month delay in the case *sub judice* was of constitutional dimension. As noted, Judge Taylor made a similar finding.

Of course, Judge Taylor was acting without the benefit of the Court of Appeals' recent decision in *State v. Gee,* 298 Md. 565, 471 A.2d 712 (1984). In *Gee,* the Court held that in a case where an indictment or information is the necessary document upon which a defendant must be tried, the speedy trial clock would begin to tick from the date of arrest or of filing the indictment or information. *Id.* at pages 567, 568, 471 A.2d 712.

■ Where the controlling law has changed between the entering of a judgment at trial, and the consideration of the matter on appeal, an appellate court shall apply the law as it exists at the time of appeal unless vested or accrued substantive rights would be disturbed or the legislature shows a contrary intent. This rule of construction has application to a change effectuated by statute or case law. *Grant v. Zich,* 53 Md.App. 610, 617, 456 A.2d 75 (and cases cited therein), *cert. granted,* 296 Md. 110 (1983); *Teays v. Supreme Concrete Block, Inc.,* 51 Md.App. 166, 167–69, 441 A.2d 1109 (1981), *cert. denied,* 293 Md. 547 (1982); 5 Am.Jur.2d *Appeal and Error* § 729 (1962); Annot., 111 A.L.R. 1317, 1342 (1937). While we recognize that the Court of Appeals' *Gee* did not change existing law, we note that the decision clarified a point of law which had been decided inconsistently. As Judge Taylor's speedy trial ruling was guided by

principles held to be incorrect in *Gee,* we shall apply the law as it has been recently explicated by the Court of Appeals.

 Accordingly, under *Gee,* the length of delay between appellant's arrest and the motion hearing was one day less than six months. In *Gee,* the Court of Appeals observed: "We are not aware of an opinion of the Supreme Court of the United States or of the appellate courts of this State which holds that a delay of six months is of constitutional dimension." *Gee,* at 578, 471 A.2d 712. Thus, this length of time is not of constitutional dimension and had this recent decision been in effect at the time of appellant's hearing, there would have been no need for Judge Taylor to have embarked on an analysis of the four-factor test. *State v. Lawless, supra.* Appellant's motion to dismiss for lack of speedy trial was properly denied.

## II. CROSS EXAMINATION ON THE PSYCHIATRIC HISTORY OF STATE WITNESS LARRY ODELL SMART—APPELLANT'S TWIN BROTHER

There is no doubt that Larry Odell Smart's testimony was extremely damaging to appellant. He testified that appellant was living with Kathleen Campbell in 1979. Larry Odell Smart stated that his brother, the appellant, informed him in January 1980 that he had murdered Campbell by strangling her after she awoke following his attempt to electrocute her while she slept. According to Larry Odell Smart, appellant placed the victim's body in a trash can and threw the can into the Shenandoah River. This witness stated that appellant's motive for killing Campbell was to prevent her from carrying out her threats to report him as a fugitive from Virginia authorities.

During both direct and cross examination, evidence was elicited concerning Larry Odell Smart's prior arson and forgery convictions and present incarceration for another arson. Over the prosecution's objection, counsel for appellant was permitted to educe the witness' admission that he had been committed on two separate occasions to a Virginia

mental hospital. One of these evaluations was in connection with auto theft charges lodged against him. Larry Odell Smart stated that he was released in 1970.

When appellant's counsel attempted to elicit the diagnosis made at the institutions, the prosecutor objected that the evidence was more than ten years old, irrelevant, and non-admissible without expert medical testimony. Appellant's counsel proffered that Larry Odell Smart had been diagnosed as schizophrenic. The court granted the State's motion to preclude appellant's line of questioning concerning the diagnosis.

■ A witness may be cross examined on matters relevant to the issues at hand. A witness' credibility is always relevant, *Smith v. State,* 273 Md. 152, 157, 328 A.2d 274 (1974), however, the trial judge has discretion to curtail cross examination to protect a witness from undue harassment. *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). Both parties' arguments rely on *Reese v. State,* 54 Md.App. 281, 458 A.2d 492 (1983), a decision handed down two weeks before appellant's trial. Therefore, our careful review of the facts, analysis and holding of that case is required.

In *Reese,* Donald Major was robbed by two men. His testimony was the crux of the State's case. Before, during, and after the case Reese sought to probe Major's psychiatric history. During a recess following Major's testimony, Reese's counsel produced evidence that Major had been admitted to Springfield State Hospital "at least twelve times in the last several years," the most recent being since the robbery but prior to trial. Major was diagnosed as having a mixed emotional disturbance and borderline personality. The Medical Administrator of the Supreme Bench of Baltimore City described that this condition indicated "someone who from time to time under stress episodes of psychosis or losing touch with reality and comes back into reality fairly easily." The Administrator opined that had Major been "out of touch" during the robbery he would not

be able to recall the details of the crime. The trial judge decided that this information was insufficient to permit cross-examination of Major on this topic but suggested that if Reese discovered other information, if convicted, he could include it in a motion for new trial. Trial then proceeded without the jury's knowledge of Major's mental health history and Reese was convicted. Following the trial judge's suggestion, Reese appended Major's Springfield State Hospital records to his motion for new trial. These records revealed that Major had been admitted to the Hospital six days after the trial and had been found to be "psychotic with bizarre, confused and agitated behavior." Reese's counsel proffered that had the jury been aware of Major's past hospitalizations, it might have weighed Major's credibility differently.

On appeal, this Court reversed and remanded for retrial. After setting forth the principles governing the admissibility of psychiatric evidence for impeachment purposes, we stated:

In determining the relevance of an inquiry into a witness's psychological instability, there is some room for discretion such as defining whether the particular disorder affects factors of credibility like memory, observation, exaggeration, imagination, etc. But even that limited sphere is further restricted by the weight of the evidence so indicating. The proffer need not be that proof beyond a reasonable doubt, or even by a preponderance of evidence, will show that such disorder is or was prevalent. It need only show that inquiry is likely to so divulge such a defect in the witness.

The trial judge in liberally permitting a broad scope of credibility inquiry must balance not only the waste of judicial time factor (as was implicit here) against the value of exploration, but must take particular care not to permit annoying, harassing, humiliating and purely prejudicial attacks unrelated to credibility. Like bad acts, not every disorder is relevant to a witness's credibility. See *Burgess v. State,* 161 Md. 162, 173, 155 A. 153 (1931).

*Id.* at 289–90, 155 A. 153. We went on to observe that had the jury had the benefit of Major's psychiatric history "a serious question would have been cast on the victim's recollection of appellant's participation" in the robbery. *Id.* at 290, 155 A. 153.

■ We acknowledge that appellant presents the same issue addressed in *Reese.* We recall that this Court reversed the trial judge's ruling in *Reese.* We shall affirm here. We cannot help but notice the many distinguishing features between *Reese* and the case *sub judice.* Major's mental illness was present before and after the trial; no evidence was proffered to indicate that Larry Odell Smart was suffering from a mental disability either at trial or when the relevant events occurred. The *Reese* jury had no idea that Major suffered mental health problems; appellant's jury was fully apprised of Larry Odell Smart's history. Major presented the only evidence against Reese; Larry Odell Smart's testimony was corroborated by the location of Campbell's car and body and by other testimony to the same effect. The trial judge in *Reese* totally precluded any mention of Major's problem; Judge Taylor permitted appellant to elicit the basic information concerning Larry Odell Smart's mental history and restricted the questioning when appellant sought to elicit the diagnosis. In view of the information previously brought out by appellant concerning Larry Odell Smart's two commitments to mental institutions as well as his prior convictions and present incarceration, we hold that the jury had heard sufficient testimony to understand the need to scrutinize this witness' credibility. There was no need to present the jury with Larry Odell Smart's entire psychological profile. Judge Taylor properly struck a balance between this evidence's value to appellant and the potential for harassment of the witness. *Id.* This is all *Reese* requires.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.