547 A.2d 1111

**Walter Trovolia WARD, Sr.**

v.

**STATE of Maryland.**

**No. 59, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Oct. 4, 1988.

Michael J. Moran, Assigned Public Defender, Towson, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Warren F. Sengstack, State's Atty. for Calvert County, Prince Frederick, on the brief), for appellee.

Submitted before WILNER, ROBERT M. BELL and POLLITT, JJ.

WILNER, Judge.

In the mid-afternoon of December 15, 1986, the protracted break-up of the relationship between appellant and Peggy Gray reached an abrupt conclusion. After a last, acrimonious telephone conversation between the two, appellant armed himself with a shotgun and drove to Gray's home. There, he kicked open the front door and, calling out Gray's name, launched a room-to-room search until he tracked her down in the basement where she was trying to flee through a back door. Then, before four witnesses, he shot Gray to death.

A Vietnam veteran, appellant pled not criminally responsible by reason of insanity. He claimed to have a condition known as Post Traumatic Stress Disorder (PTSD) and argued that the shooting occurred while he was in the throes of a flashback to Vietnam, brought on by the condition, that rendered him legally insane at the time. The jury disagreed, finding appellant guilty of first degree murder, wearing and carrying openly a dangerous and deadly weapon with intent to injure, assault, and breaking and entering a dwelling house with the intent to commit murder. Appellant was sentenced to life in prison for the murder conviction, three years in prison to run consecutively for the weapons conviction, and three years each to run concurrently for the convictions of assault and breaking and entering.

From these convictions, this appeal is taken on the ground that:

The trial court committed reversible error by permitting the State's expert to testify regarding the diagnosis reached by other members of the diagnostic team àt Clifton T. Perkins Hospital Center.

More specifically, appellant contends that the testimony of the State's expert (1) was inadmissible hearsay; (2) denied appellant his right of confrontation as guaranteed by Article 21 of the Maryland Declaration of Rights and the Sixth Amendment of the United States Constitution; and (3) unfairly prejudiced the jury regarding the issue of specific intent. We agree that appellant's right of confrontation has been violated and therefore shall reverse and remand for a new trial.

Appellant's argument centers on the testimony of Dr. Faramarz Mokhtari, a forensic psychiatrist who was a member of the multi-disciplinary team at Clifton T. Perkins Hospital (Perkins) that examined appellant upon his plea of not criminally responsible. The State called Dr. Mokhtari as an expert witness to rebut expert testimony presented by appellant that he suffered from PTSD and was legally insane at the time of the shooting. The multi-disciplinary team of which Dr. Mokhtari was a member consisted of two additional psychiatrists, two psychologists, one social worker, one occupational therapist, and one nurse. Each psychiatrist and psychologist on the team diagnosed appellant's mental state independently. Those five then met and voted on an official diagnosis.[1] Appellant complains that by revealing, over objection, that the vote was unanimous, Dr. Mokhtari testified not only to his own diagnosis of appellant's mental state but also to the diagnoses of the other psychiatrists and psychologists on the team who were not called to testify at trial.

---

1. A Perkins psychologist who was not a voting member of the team, Lawrence Raifman, Ph.D., testified at trial on behalf of the State.

### 1. *Hearsay*

■ Dr. Mokhtari informed the Court, that the psychiatrists and psychologists on the multi-disciplinary team that evaluated appellant's mental condition unanimously diagnosed him as having an "adjustment disorder with mixed disturbance of mood and conduct." [2] Appellant contends that the testimony was hearsay and that its admission was reversible error. While we agree that the testimony that the diagnosis was unanimous was hearsay, we do not believe that its admission would warrant reversal if not for the confrontation problem discussed *infra.*

■ A careful review of the trial transcript indicates that Dr. Mokhtari was testifying, at least in part, from the hospital record. The unanimous diagnosis was apparently noted in the record. Our case law makes clear that hospital records kept by Clifton T. Perkins Hospital pursuant to court-ordered examinations are kept within the regular course of business and are therefore within the business records exception to the hearsay rule. *Dunn v. State,* 226 Md. 463, 478, 174 A.2d 185 (1961); *Raithel v. State,* 40 Md.App. 107, 118–19, 388 A.2d 161 (1978), *aff'd* 285 Md. 478, 404 A.2d 264 (1979); Md.Cts. & Jud.Proc.Code Ann. § 10–101 (1984 repl. vol.). The unanimous diagnosis would be admissible as part of the business record since the diagnosis was both "pathologically germane" to treatment, *see State v. Garlick,* 313 Md. 209, 222, 545 A.2d 27; *Dunn,* 226 Md. at 478, 174 A.2d 185 and since it can be inferred from the fact that the records came from a reputable

---

2. The testimony, during direct examination of Dr. Mokhtari, was as follows:

"Q. [Mr. Sengstack] Let me go over [this] again.... Mr. Ward was diagnosed unanimously[?]

MR. PITROF [Defense Counsel]: Objection, Your Honor. The doctor can testify as to what his diagnosis is. The doctor can't testify what the diagnosis of those persons who are not present here did.

THE COURT: Overruled.

A. [Dr. Mokhtari] The Perkins Hospital voting members unanimously diagnosed Mr. Ward as Adjustment Disorder with mixed disturbance of mood an[d] conduct...."

hospital that the health care professionals who made the diagnosis were qualified to do so. *Raithel,* 40 Md.App. at 119, 388 A.2d 161; *Marlow v. Cerino,* 19 Md.App. 619, 636–37, 313 A.2d 505, *cert. denied* 271 Md. 739 (1974).

Because Dr. Mokhtari seemed to be testifying from the hospital record and because the record, with the unanimous diagnosis therein, would have been admissible, we conclude that there was no reversible error in admitting the testimony against a hearsay objection alone. In reaching this conclusion we note that the Court of Appeals has allowed a witness "to testify from the corporate records" where, as here, the witness had personal knowledge of the entries in the records and there was no reason to believe the records had been altered. *Killen v. Houser,* 251 Md. 70, 76, 246 A.2d 580 (1968).

### 2. *Confrontation Right*

Appellant next contends that his general objection regarding the unanimous diagnosis was also based on the violation of his constitutional right to confront and cross-examine witnesses.

■ As a general rule, hearsay testimony will not offend the right of confrontation where the hearsay is cloaked with a substantial indicium of reliability and the State can show that the declarant is unavailable. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). If the declarant is not unavailable, as in the case at bar, the State must show that the utility of cross-examination would be remote. *Id.* at 65 n. 7, 100 S.Ct. at 2538 n. 7; *Dutton v. Evans,* 400 U.S. 74, 88–89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970); *Garlick,* 313 Md. at 215–16, 225–26, 545 A.2d 27; *Moon v. State,* 300 Md. 354, 368–69, 478 A.2d 695 (1984), *cert. denied* 469 U.S. 1207, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985); *Casper v. State,* 70 Md.App. 576, 588, 521 A.2d 1281 (1987). We do not believe that either prong of this test has been satisfied.

■ The fact that a hospital record may be generally admissible as a business record, against either a hearsay or confrontation objection, does not necessarily mean that each

and every entry in it is so admissible. *See Dietz v. Moore,* 277 Md. 1, 7, 351 A.2d 428 (1976); *Garlick,* 313 Md. at 220–21, 545 A.2d 27. As we observed in *Gregory v. State,* 40 Md.App. 297, 325–26, 391 A.2d 437 (1978), *quoted with approval in Garlick,* 313 Md. at 220–21, 545 A.2d 27:

> "The mere fact that a document is part of a hospital record made in the ordinary course of the hospital's business, and may therefore be admissible under the hearsay rule, does not *ipso facto* make its admission comply with the confrontation requirement....

> We have here not the routine record of a person's birth, or death, or body temperature, nor any other similar statement of fact or condition objectively ascertained, generally reliable and normally undisputed, and free from any motive to record falsely. We are dealing with the opinions of supposed expert witnesses, who, in this document, are giving testimony not only as to appellant's mental condition, but, more importantly, as to whether or not he is criminally responsible."

■ It is true, as the State points out, that the challenged testimony here did not directly address appellant's ultimate criminal responsibility but went only to the diagnosis of his mental disorder. We find that distinction to be unavailing, however. Although there was no dispute that appellant had a mental disorder, the nature and consequences of the disorder were very much in contention. Dr. Mokhtari told the jury, in effect, that every psychiatrist and psychologist on the Perkins team believed that appellant had "an adjustment disorder with mixed disturbance of mood an[d] conduct." The clear inference from that testimony, when considered in conjunction with other testimony from Dr. Mokhtari and the defense experts, was that the psychiatrists and psychologists on the team also concluded, unanimously, that appellant did not suffer from PTSD, which is a somewhat related but quite different disorder.

The underpinning of *Gregory* was the recognition that psychiatry is not an exact science and that opinions as to one's specific mental condition and deficiencies can and do

vary widely. We observed, 40 Md.App. at 326, 391 A.2d 437, that:

"One need do no more than peruse the reported appellate opinions touching upon the issue of a criminal defendant's 'sanity' to see the frequency with which well-qualified and presumably competent practitioners express different— and sometimes widely varying—opinions concerning the critical issue. Considering the less-than-certain and ever shifting state of the art, these opinions, given their ultimate potential effect, cry out for cross-examination."

This kind of diagnosis does not lend itself to objective confirmation. It is not something that can be validated by microscopic, chemical, or other precise scientific examination but remains primarily a matter of opinion based principally upon a trained professional's evaluation of the subject's behavior and responses to psychological testing. Unlike the kinds of medical facts noted in *Gregory* or medical conclusions having a more objective foundation, such as blood tests, this kind of opinion, especially where contested, is not so cloaked with a substantial indicium of reliability as to escape the need for confrontation.

In this case, moreover, although the challenged statement directly addressed only the diagnosis, it had a significance beyond that. Both Dr. Mokhtari and a psychologist who testified for the State opined that an adjustment disorder is not sufficient to cause a person to meet the test of non-responsibility. The clear import of their further testimony was that a person suffering only from an adjustment disorder is criminally responsible. The defense witnesses did not dispute that conclusion; as noted, their opinion as to appellant's non-responsibility rested on the premise that he suffered from PTSD and not merely from an adjustment disorder. Dr. Mokhtari's testimony as to the diagnostic opinions of the other team members therefore, at least indirectly, touched upon a critical ultimate issue in the case.

On this record, we are not prepared to say that cross-examination of the other team members would have been in any sense futile. The diagnosis was a matter of dispute

between experts.  It is not the kind of medical conclusion that enjoys a generic indicium of reliability.  And despite Dr. Mokhtari's brief description of how the evaluation process works at Perkins, there was no indication of how each of the other psychiatrists and psychologists on the team arrived at his or her individual diagnosis.  On cross-examination, counsel could have inquired as to what information each considered particularly relevant, how that information was weighed, the extent to which any team member may have deferred to the opinion of another team member, and many other aspects of how each member came to his or her conclusion.

### 3.  *Unfair Prejudice*

Finally, appellant argues that he was unfairly prejudiced by the admission of the testimony regarding the unanimous diagnosis because the jury may have considered it not just on the issue of criminal responsibility but also in determining if the State met its burden of proving that appellant had the specific intent to commit the crimes with which he was charged.  In light of our holding that admission of the testimony violated appellant's right of confrontation, we need not address this issue.

JUDGMENTS REVERSED;  CASE REMANDED FOR NEW TRIAL; CALVERT COUNTY TO PAY THE COSTS.