633 A.2d 455

**Richard George REYNOLDS**

**v.**

**STATE of Maryland.**

**No. 117, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 2, 1993.

350

William F. Renahan, Lanham, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty., for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued before ALPERT, HARRELL and MURPHY, JJ.

MURPHY, Judge.

Richard George Reynolds, appellant, was convicted by a jury in the Circuit Court for Prince George's County (Hon. Graydon S. McKee III, presiding) of child abuse, fourth degree sex offense, assault and battery. He has appealed those convictions, and presents four issues for our review:

1. "Did the Trial Court err in ruling that § 9–109 of the Courts and Judicial Proceedings Article, Annotated Code of Maryland prohibited testimony of the complaining witness's psychiatrist and psychologist on behalf of the Defendant?

2. Did the admission by the Trial Court of the medical records of the complaining witness's stay in Psychiatric Unit of Anne Arundel General Hospital, over the objection of the Defendant, violate his right of confrontation under the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights?

3. Did the Trial Court err in allowing the State's expert to opine that the complaining witness's post traumatic stress disorder was the result of long term physical and sexual abuse?

4. Did the Trial Court err in refusing to grant a mistrial when it denied Defendant's Motion to strike the testimony of (the victim) or, in the alternative, stay proceedings to allow perjury prosecution of the complaining witness, when the complaining witness admitted that she had committed perjury at a previous hearing?"

Issue 1 has not been preserved for our review because there was no proffer of what the witnesses would have said if they had been permitted to testify. Issue 3 has not been preserved for our review because there was no objection to the opinion when it was expressed at trial. Issue 4 is utterly without merit. Issue 2, however, has been preserved and does have merit. We shall first explain why the admission of certain entries in the hospital record violated appellant's right of confrontation, and shall then address discovery and impeachment issues that are certain to arise during the retrial.

## BACKGROUND

The complaining witness, whom we shall refer to as the patient, is appellant's daughter. She alleged that she had been sexually abused for over ten years, but did not report the abuse to any law enforcement officer until almost one year after it had stopped. Appellant, the patient, and other members of their severely dysfunctional family had been treated for several years by many health care professionals, including Merrill Rasmussen, a psychologist. Before trial, the patient signed the following waiver so the State could obtain her mental health records.

"TO WHOM IT MAY CONCERN:

Please release my medical and psychiatric records to the State's Attorney's Office for Prince George's County, Maryland."

The State's case-in-chief included expert testimony from Dr. Nancy Davis, a psychologist whose opinions were based entirely on information supplied by the patient during two pretrial interviews. Dr. Davis testified that the patient suffered from a post traumatic stress disorder as a result of long term physical and sexual abuse. Dr. Rasmussen did not testify.

The patient's direct examination included testimony about statements she made to physicians, psychologists, and hospital personnel at several institutions over a period of many years. She testified about having attempted suicide, described various mental disorders she suffered from, discussed the treatment she had received, identified drugs that had been prescribed for her, and explained why she had not reported the abuse earlier. In an effort to corroborate the patient's testimony, the State offered into evidence records of her in-patient treatment during an admission to the Anne Arundel General Hospital.

# I

Defense counsel offered two reasons why the admission of certain entries in the hospital record would violate appellant's right of confrontation guaranteed by the sixth amendment of the United States Constitution, and by Article 21 of the Maryland Declaration of Rights: (1) he could not cross examine the hospital personnel who had recorded various statements made by the patient; and (2) he could not cross examine the health care providers whose evaluations and conclusions were contained in the records.

The trial judge reviewed the records entry by entry, and overruled the objection to entries that were relevant to diagnosis and treatment. The portions admitted over appellant's confrontation objection included (a) progress notes, (b) evaluation worksheets, (c) treatment plans, (d) consultation reports and (e) a discharge summary. In addition to statements made by the patient, the records revealed (1) that she was "allegedly positive for possible sexual child abuse by the Dad . . . ;" (2) that one doctor "believes" she is suicidal and "questions that

patient may have been abused" by her father; (3) that the treatment plan should include techniques designed to "encourage openness about sexual abuse . . . ;" (4) that the patient may have been "using food as a transference of feelings about father;" (5) that one doctor who observed her "sitting on lap of father in her room . . . felt it was inappropriate . . . ;" and (6) that she "seems to be gaining insight into the need to . . . discuss issue of sexual abuse."

■ We agree with the trial judge that appellant did not have a right to confront the hospital personnel who merely recorded the statements made by the patient. The patient testified and was cross-examined vigorously. The persons who merely wrote down what she said had a "business duty" to record her statements accurately. We are persuaded that cross-examination of these persons would have been pointless. The confrontation clause does not operate to exclude hearsay evidence that fits into the well recognized and "firmly rooted" hospital record exception to the rule against hearsay. *White v. Illinois*, —— U.S. ——, —— n. 8, 112 S.Ct. 736, 742 n. 8, 116 L.Ed.2d 848 (1992). Because the patient testified at trial, the trial judge did not err in admitting those portions of the record that included statements made by the patient during her hospitalization.

■ The entries that contain evaluations and conclusions, however, present an entirely different issue. On two occasions, this Court has held that the defendant's right of confrontation was violated by the introduction of Clifton T. Perkins Hospital records that contained opinions of evaluating psychiatrists who were not called to testify at trial. *Gregory v. State*, 40 Md.App. 297, 325–328, 391 A.2d 437 (1978); *Ward v. State*, 76 Md.App. 654, 659–662, 547 A.2d 1111 (1988). The State argues that *Gregory* and *Ward* should be limited to evaluative reports in the records of the Clifton T. Perkins Hospital, and should not be applied to hospital records that "report matters relating to (the victim's) treatment and are reliable in this respect." We disagree.

▬ The hearsay exception for hospital records extends to everything in the hospital record that is "pathologically germane" (i.e., relevant) to diagnosis and treatment. As a general rule, the confrontation clause does not require exclusion of hospital records that contain objective scientific findings, such as the results of a blood test. *State v. Garlick*, 313 Md. 209, 215, 545 A.2d 27 (1988). On the other hand, a defendant's right of confrontation is offended by the introduction of blood test results contained in a hospital record if, on the face of the record, there is a substantial question about the reliability of the results reported therein. *Moon v. State*, 300 Md. 354, 370–371, 478 A.2d 695 (1984). The same principle must be applied to opinions. The right of confrontation is offended by the introduction of an opinion contained in a hospital record if, on the face of the record, the opinion is too ambiguous to be helpful, or appears to lack an adequate factual basis.

▬ Opinions contained in a hospital record are not excluded under the rule against hearsay. They are, however, subject to the foundational requirements that apply to expert testimony. For an opinion to be admitted through a hospital record it must appear from the record itself that the person who expressed the opinion is qualified to do so. *Marlow v. Cerino*, 19 Md.App. 619, 636, 313 A.2d 505 (1974). It must also appear from the record itself that there is an adequate factual basis for the opinion. If the factual basis for the expert's opinion is inadequate as a matter of law, the opinion is inadmissible. *Bohnert v. State*, 312 Md. 266, 278, 539 A.2d 657 (1988); *Hartless v. State*, 327 Md. 558, 578–579, 611 A.2d 581 (1992); *B & K Rentals v. Universal Leaf*, 84 Md.App. 103, 121, 578 A.2d 274 (1990) *rev'd. on other grounds*, 324 Md. 147, 596 A.2d 640 (1991); *Globe Security Sys. v. Sterling*, 79 Md.App. 303, 308, 556 A.2d 731 (1989); *Keen Corp. v. Hall*, 96 Md.App. 644, 660, 626 A.2d 997 (1993). An opinion that would be excluded with the expert on the witness stand cannot be admitted into evidence because it has been entered in a hospital record.

On three occasions, this Court has held that the trial judge correctly sustained the State's objection to hospital records offered by defense counsel. *Testerman v. State,* 61 Md.App. 257, 486 A.2d 233 (1985); *Cirincione v. State,* 75 Md.App. 166, 540 A.2d 1151 (1988); *Clarke v. State,* 97 Md.App. 425, 630 A.2d 252 (1993). In each case, the record was properly excluded as inadequate on its face. The right of confrontation that appellant asserted in this case is identical to the State's right to obtain the exclusion of defense evidence that lacks a proper foundation.

In *Testerman,* the defense attempted to establish that the rape victim was suffering from schizophrenia. The trial judge sustained the State's objection to hospital records that reported her condition as "Schizophrenia. Schizo-defective type depressed." We affirmed this ruling because the defense failed to produce expert testimony that explained how this type of mental disorder would affect the victim's credibility. 61 Md.App. at 267–268, 486 A.2d at 238.

In *Cirincione,* the defense attempted to establish that, at the time his conduct caused the death of a traffic officer, the defendant "was voluntarily intoxicated on PCP." The trial judge sustained the State's objection to hospital records reporting that three doctors had reached that very opinion. We held that the trial judge was correct:

"The appellant will not be permitted to get four expert opinions for the price of one. The proffered opinion that 'he was voluntarily intoxicated,' moreover, were too ambiguous to be helpful. How intoxicated? . . . . Probing cross-examination was indispensable."

75 Md.App. at 183–184, 540 A.2d at 1160.

In *Clarke,* the defense attempted to establish that the assault victim's perception and recollection had been impaired by the use of drugs. The trial judge sustained the State's objection to hospital records reporting the victim's blood test results as "presumptive positive" for the presence of marijuana. We affirmed this ruling because the defense failed to produce expert testimony that explained the meaning of the

term "presumptive positive." 97 Md.App. at 431, 630 A.2d at 255.

> In *Gregory*, Chief Judge Wilner pointed out that the court must look more closely at the disputed document itself. What evidence is contained in it? For what purpose is it offered? Does the statement in it relate directly and critically to the defendant's guilt ...? Is the document primarily the recordation of a fact as easily and reliably proven by the document itself ...? If testimonial in nature, why is the author ... not in court? Is the information ... of a type that ... its mere recordation ... lends a sufficient reliability to it to be acceptable as trustworthy evidence?

40 Md.App. at 326, 391 A.2d at 454.

The entries introduced over appellant's objection were offered to prove that various health care providers concluded that the patient had been abused by appellant. It appears from the record that these opinions were based on nothing more than a belief that the patient's accusation was true and appellant's denial was false. If that is the basis for these opinions, they should have been excluded for lack of a legally adequate basis:

> "It is the settled law of this State that a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth. Testimony from a witness relating to the credibility of another witness is to be rejected as a matter of law."

*Bohnert, supra,* 312 Md. at 278, 539 A.2d at 663.

■ When defense counsel interposes a timely "confrontation" objection to hospital records containing opinions that are ambiguous or that appear to lack an adequate factual basis, such opinions cannot be admitted into evidence without testimony that clarifies the ambiguity or demonstrates that there is an adequate basis. If defense counsel had been given an opportunity to confront the declarants whose opinions were contained in the hospital records, opinions lacking an adequate basis would have been excluded. We conclude that the opinions do appear to be based on an inadequate foundation and

that, under the circumstances, cross-examination of the health care providers would not have been unavailing, pointless or frivolous. We hold that appellant had a right to confront the health care providers whose evaluations and conclusions were introduced through the hospital record.

There is an additional reason why the trial judge should have excluded a statement attributed to appellant's wife. According to the Discharge Summary, appellant's wife "says that she can believe her husband might be guilty ... that he is emotionally abusive ... and physically abusive as well ..." This belief was inadmissible even if the out-of-court declarant were present at trial. *Brafman v. State,* 276 Md. 676, 680, 349 A.2d 632 (1976). We are unable to declare that appellant was not prejudiced by the records admitted over his timely objection. He is entitled to a new trial.

## II

For the guidance of the parties and the trial judge, we shall address the privilege and privacy issues that are certain to arise during the retrial. Appellant made a pretrial request to inspect all of the patient's mental health records. That request was properly denied. The defendant is not entitled to a patient's records merely because the patient takes the witness stand. *Avery v. State,* 15 Md.App. 520, 536, 292 A.2d 728 (1972), *cert. denied,* 266 Md. 733; *Oliver v. State,* 53 Md.App. 490, 499, 454 A.2d 856 (1983), *cert. denied,* 296 Md. 61 (1983).

Appellant contends that his defense counsel must be given an opportunity to inspect the patient's mental health records at an expanded in camera hearing. For this proposition he relies upon *Zaal v. State,* 326 Md. 54, 602 A.2d 1247 (1992) and *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). We do not agree that those cases support that argument. The records at issue in *Zaal* were made confidential by a regulation that provided for their release in compliance with "a judicial order or lawfully issued subpoena." 326 Md. at 61–62 n. 1, 602 A.2d at 1250 n. 1. The records at

issue in *Ritchie* were made confidential by a statute that provided for their release "pursuant to a court order." 480 U.S. at 43 n. 2, 107 S.Ct. at 994 n. 2. The records at issue in this case are made privileged by Md.Code Ann., Cts. & Jud.Proc. § 9–109 (1974, 1989 Repl.Vol., 1993 Cum.Supp.) (hereinafter C.J. 9–109). That statute does not contain a provision for the release of records containing information about privileged communications. It provides in pertinent part:

> "(b) Privilege generally.—Unless otherwise provided, in all judicial, legislative, or administrative proceedings, a patient or his authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental or emotional disorder.

> . . . .

> (d) Exclusion of privilege.—There is no privilege if:

> (1) A disclosure is necessary for the purposes of placing the patient in a facility for mental illness;

> (2) A judge finds that the patient after being informed there will be no privilege, makes communications in the course of an examination ordered by the court and the issue at trial involves his mental or emotional disorder;

> (3) In a civil or criminal proceeding:

> (i) The patient introduces his mental condition as an element of his claim or defense; or

> (ii) After the patient's death, his mental condition is introduced by any party claiming or defending through or as a beneficiary of the patient;

> (4) The patient, an authorized representative of the patient, or the personal representative of the patient makes a claim against the psychiatrist or licensed psychologist for malpractice;

> (5) Related to civil or criminal proceedings under defective delinquency proceedings; or

(6) The patient expressly consents to waive the privilege, or in the case of death or disability, his personal or authorized representative waives the privilege for purpose of making claim or bringing suit on a policy of insurance on life, health, or physical condition."

We are persuaded that this statutory privilege affords greater protection than the provisions discussed in *Zaal* and *Ritchie.*

█ Appellant next contends that the trial judge erroneously denied him the right to review the patient's mental health records because the release she signed for the prosecutor constituted a waiver of her statutory privilege. We disagree. A defendant does not gain access to a patient's records merely because the patient has executed a limited waiver that allows the prosecutor to review the records.

█ Although a patient may not selectively waive the privilege by arbitrarily picking and choosing among similarly situated parties, a limited waiver will be recognized if there is a reasonable basis for the particular limitation. *Hamilton, Superintendent v. Verdow,* 287 Md. 544, 552–553, 414 A.2d 914 (1980). No waiver of the privilege should result from the holder's limited disclosure to a person who has a separate confidential relationship with the holder. Inwinkelried, Gianneli, Gilligan & Lederer, *Courtroom Criminal Evidence* § 1611 at 412–413 (1987). There is a confidential relationship between an alleged victim and the prosecutor investigating criminal charges. *Riggins v. State,* 125 Md. 165, 172–173, 93 A. 437 (1915). The execution of a limited waiver, giving the prosecutor pre-trial access to the patient's treatment records, did not automatically entitle appellant to inspect those records.

█ During the trial, however, the shield was turned into a sword. The State introduced the Anne Arundel General records, then objected when appellant thereafter attempted to call Dr. Rasmussen. The trial judge sustained the State's objection to this witness when the patient refused to waive her statutory privilege. That ruling was incorrect. By her unqualified waiver with respect to the Anne Arundel General

records, the patient waived her statutory privilege with respect to the remainder of her mental health records. If, during the next trial, the State introduces any portion of the patient's mental health records that contain information about privileged communications, appellant must be given the opportunity to inspect the remainder of those records and cannot be prohibited on the basis of privilege from introducing any evidence derived therefrom.

## III

We recognize that the State may not attempt to introduce the Anne Arundel General records at the new trial and that appellant has not abandoned his claim of entitlement to inspect all of the patient's mental health records. We shall therefore address the issues that arise whenever a defendant's constitutional right to discover favorable evidence clashes with a victim's statutory privilege and constitutional right to privacy.

The State contends that, without a waiver by the patient, not even the trial judge can inspect mental health records that include communications between the patient and her psychiatrists or psychologists. Appellant contends that a defendant charged with child abuse has a constitutional right to inspect the alleged victim's mental health records. Neither of these overbroad contentions is entirely correct.

The defendant has a due process right to discover and put before the factfinder evidence that might influence the determination of guilt. *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 1000–1001, 94 L.Ed.2d 40 (1987). Such evidence includes proof that a State's witness is now, or was at a relevant period of time, suffering from a mental disability that reasonably calls into question his or her ability to observe, recall, or communicate. *Reese v. State*, 54 Md.App. 281, 289–292, 458 A.2d 492 (1983). The defendant cannot be prohibited from discovering evidence the nondisclosure of which would undermine confidence in the outcome of the trial. *Ritchie*, supra, 480 U.S. at 57, 107 S.Ct. at 1001.

 The alleged victim has a statutory privilege "to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of [his or her] mental or emotional disorder." C.J. § 9–109(b). In addition to this privilege, all mental health records are made confidential by Md.Code Ann., Health–Gen. § 4–307 (1982, 1990 Repl. Vol., 1993 Cum.Supp.), and every citizen has a constitutional right of privacy in his or her medical records. *Dr. K. et al. v. The State Board of Physician Quality Assurance,* 98 Md.App. 103, 116, 632 A.2d. 453, 459–460 (1993).

In *Hamilton, Superintendent v. Verdow,* 287 Md. 544, 414 A.2d 914 (1980), the Court of Appeals recognized the doctrine of executive privilege and established a procedure to be followed by a court faced with an executive privilege claim:

"It has been repeatedly held that *in camera* inspection by the trial judge does not automatically follow whenever a claim of executive privilege is made.... Thus, when a formal claim of executive privilege is made, with an affidavit stating that the demanded materials are of a type that fall within the scope of the privilege, they are presumptively privileged even from *in camera* inspection. The burden is on the party seeking production to make a preliminary showing that the communications or documents may not be privileged or, in those cases where a weighing approach is appropriate, that there is some necessity for production.

.... Consequently, absent such a preliminary showing by the party demanding disclosure, the claim of executive privilege should be honored without requiring an *in camera* inspection.

On the other hand, where a sufficient showing is made to overcome the presumption, the court should order an *in camera* inspection. Depending upon the issues and circumstances, the in camera inspection may be utilized to determine whether the material is privileged, to sever privileged from non-privileged material if severability is feasible, and

to weigh the government's need for confidentiality against the litigant's need for production."

287 Md. at 566–567, 414 A.2d at 926–927.

■■■ We hold that the procedure established to resolve claims of executive privilege should also be applied to claims of privilege under C.J. 9–109. No defendant has an absolute right to inspect each and every privileged mental health record of the alleged victim. Records containing information about communications between the patient and the psychiatrist or psychologist are presumptively privileged. There are, however, occasions on which the trial judge must make an in camera inspection of certain mental health records despite the fact that they contain information about privileged communications. Records that are presumptively privileged under C.J. 9–109 should be reviewed by the judge alone. *Zaal* does not hold that counsel must always be present when records are reviewed in camera:

> "In cases in which access to confidential and/or sensitive records is sought by a defendant and which will be resolved based on credibility considerations, because of which, the trial court determines the 'need to inspect' threshold has been crossed, the court may elect to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone, as officers of the court, subject to such restrictions as the court requires to protect the records' confidentiality....
>
> In any case, when the court reviews the records alone, it must approach its task cognizant of the fact that it is not an advocate and, in most instances, will not, and, indeed, cannot be expected, to discern all the nuances or subtleties which may render an innocuous bit of information relevant to the defense. Thus the court's review is not to determine whether, and, if so, what, is 'directly admissible;' rather, it is to exclude from the parties' review material that could not, in anyone's imagination, properly be used in defense or lead to the discovery of usable evidence. Only when the records

are not even arguably relevant and usable should the court deny the defendant total access to the records. . . .

The trial court's review should not only be aimed at discovering evidence directly admissible but also that which is usable for impeachment purposes, or that which would lead to such evidence."

326 Md. at 87–88, 602 A.2d at 1263–64.

*Zaal* approved of the discovery alternatives suggested by the Supreme Judicial Court of Massachusetts in *Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992 (1991). 326 Md. at 84–85, 602 A.2d at 1262–63. *Stockhammer* has been modified by *Commonwealth v. Bishop*, 416 Mass. 169, 617 N.E.2d 990 (1993), in which the court established a five stage procedure for deciding motions to compel production of privileged records, one stage of which is relevant here. In the second stage of that procedure, the judge alone reviews the privileged records to determine whether the prosecutor and defense counsel should have controlled access to any of them. 617 N.E.2d at 997–998.

We call for a procedure that separates information protected by C.J. 9–109 into three categories: (1) information that is not reviewed by the trial judge because there has been no preliminary showing of necessity for a review; (2) information that is reviewed by the trial judge alone, but not thereafter revealed to counsel because it is not even arguably relevant and usable; and (3) information that is reviewed by the trial judge and thereafter revealed to counsel in their roles as officers of the court. This procedure is entirely consistent with the cases decided by and relied upon by our Court of Appeals.

 The defendant bears the burden of demonstrating the need for inspection of records containing information that is privileged under C.J. § 9–109. The appropriate degree of persuasion is identical to the burden that must be shouldered by the defendant seeking a new trial on the basis of newly discovered evidence. *Ritchie, supra*, 480 U.S. at 58, 107 S.Ct. at 1002. That burden is found in *Yorke v. State*, 315 Md. 578,

588, 556 A.2d 230 (1989). The defendant must establish that there is a substantial possibility that the verdict would be affected if the trier of fact had the opportunity to consider the information contained in the records at issue.

When the defense has subpoenaed the mental health records of a State's witness, the trial judge must first determine what mental health records exist and which portion of those records are presumptively privileged under C.J. § 9–109. These determinations should be made at an on-the-record in camera hearing conducted like in camera hearings required by Md.Ann.Code art. 27, § 461A(b) (1957, 1992 Repl. Vol., 1993 Cum.Supp.) when the defense seeks to introduce evidence relating to the chastity of a rape victim. Notice of this hearing shall be given to the patient, and to any health care provider whose records are being sought. Those persons, as well as the defendant, have a right to be present at this phase of the hearing. During this hearing the technical rules of evidence, except those relating to privileged communications, shall be relaxed.

Privilege statutes must be narrowly construed. Records of statements made by the patient during group therapy sessions, records of statements made by the patient to other patients during a hospital stay, and records of medication prescribed for the patient are not privileged under C.J. § 9–109. These records are confidential and the patient has a right to privacy with respect to them, but they should not be kept from defense counsel under the theory that they are privileged.

Once the relevant records have been identified, the trial judge must next determine what presumptively privileged records should be reviewed. If it appears that a certain record contains some information that is privileged, and some that is not, the trial judge shall review that record to determine how much non-privileged information is contained therein. Any presumptively privileged records shall be inspected by the trial judge alone. It is for the trial judge, not for the patient or the health care provider, to determine what records

will be reviewed. The trial judge, however, should not make an in camera review of each and every document that contains privileged information. The patient's claim of privilege shall be honored unless the need for inspection has been established.

The burden is on the defendant to persuade the trial judge that there is a substantial possibility that (1) the particular records, or a portion thereof, are not privileged; or (2), although privileged, the records contain information that might influence the determination of guilt. If, for example, there is a substantial possibility that presumptively privileged records contain information about prior child abuse accusations made by the patient, the trial judge must review the records. Statements about child abuse are not privileged and must be reported by health care providers, "(n)otwithstanding any other provision of law, including any law on privileged communications." Md.Code Ann., Fam.Law § 5–704(a) (1984, 1991 Repl.Vol., 1993 Cum.Supp.). If there is a substantial possibility that presumptively privileged records would reveal that the patient's recollections of child abuse have been induced by hypnosis, the trial judge must review the records. Hypnotically induced recollections are inadmissible as a matter of law. *McCoy v. State,* 301 Md. 666, 678, 484 A.2d 624 (1984).

 The records that are identified but not reviewed shall be separated and filed under seal. The records that are reviewed but "are not even arguably relevant and usable" shall also be sealed, but filed separately from the records that are not reviewed. We use the term trial judge because the judge who will preside at trial should, whenever possible, conduct the in camera hearing and review of records, as "information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial." *Ritchie, supra,* 480 U.S. at 60, 107 S.Ct. at 1003.

■ The trial judge shall then resume the expanded in camera hearing to review with counsel all of the patient's mental health records, except the privileged records placed under seal. The defendant does not have a right to be present at this phase of the hearing because counsel are being granted access to the records in their roles as officers of the court. At this point, the patient shall be given an opportunity to assert his or her privacy interest, while the prosecutor and defense counsel shall be given an opportunity to argue for permission to use confidential information at trial.

■ Counsel are prohibited from making any use of the confidential records unless and until the trial judge grants permission to do so. For example, records showing that the patient was under medication during a particular period of time might be relevant for purposes of impeachment, *Eiler v. State,* 63 Md.App. 439, 449–451, 492 A.2d 1320 (1985), or for purposes of rehabilitation, *Ali v. State,* 67 Md.App. 339, 345–346, 507 A.2d 648 (1986), *aff'd.* 314 Md. 295, 309–310, 550 A.2d 925 (1988). Those records would remain confidential, however, unless counsel established that disclosure was necessary.

■ Although the trial judge cannot restrict the defendant's right to discover evidence that might influence the verdict, the defendant does not have a right to introduce each and every detail discovered in the mental health records of a State's witness. *Smart v. State,* 58 Md.App. 127, 134, 472 A.2d 501 (1984). If the introduction of a particular item of evidence would be likely to cause confusion or unfair prejudice, the trial judge has discretion to exclude it, notwithstanding the fact that it would provide an additional means for impeaching the witness. *Brooks v. Daley,* 242 Md. 185, 193–194, 218 A.2d 184 (1966); *Medical Mutual v. Evans,* 91 Md.App. 421, 429–430, 604 A.2d 934 (1992), *rev'd on other grounds,* 330 Md. 1, 622 A.2d 103 (1993). In striking the delicate balance between releasing enough information that will allow the parties to prove what they have a right to prove, while excluding particular details that would serve only to

humiliate the witness or create the danger of unfair prejudice, the trial judge is not obligated to release for use at trial more information than will be "sufficient (for the trier of fact) to understand the need to scrutinize this witness' credibility." *Smart*, supra, 58 Md.App. at 135, 472 A.2d at 505.

After giving due weight to the interest of the State, the defendant and the patient, the trial judge shall decide how much of the confidential information must remain confidential and how much will be available for use at trial. This procedure will protect the rights of the patient and the defendant, by shielding privileged information that is entitled to protection while granting pretrial access to information the suppression of which would undermine confidence in the outcome of the trial.

**JUDGMENTS REVERSED; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**