840 A.2d 744

Jane DOE, et al.

v.

MARYLAND BOARD OF SOCIAL WORKERS.

No. 1679, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Jan. 7, 2004.

524

Timothy F. Maloney (Cary J. Hansel, Brian J.Markovitz, Joseph, Greenwald & Laake, P.A., on brief), Greenbelt, for appellant.

Janet Klein Brown (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before MURPHY, C.J., SALMON and KENNEY, JJ.

MURPHY, C.J.

This appeal involves a subpoena issued by the Maryland Board of Social Worker Examiners (the Board), appellee, for the "complete patient file" of Jane and John Doe, appellants, who are clients of licensed social worker Ms. F.[1] In the Circuit Court for Baltimore City, appellants filed a Motion to Seal the Record and a Motion to Quash the Subpoena. On August 23, 2002, the Honorable Kaye A. Allison entered an Order that granted appellants' Motion to Seal the Record but denied their Motion to Quash the Subpoena. Appellants have appealed the denial of their Motion to Quash, and present the following questions for our review:

I.  DID THE CIRCUIT COURT ABUSE ITS DISCRETION BY DENYING APPELLANTS' MOTION TO QUASH THE SUBPOENA?

II.  DID THE CIRCUIT COURT ERR WHEN IT HELD THAT THE INTERESTS OF THE STATE IN THE LIMITED DISCLOSURE OF MENTAL HEALTH RECORDS OUTWEIGHED APPELLANTS' CONSTITUTIONAL PRIVACY INTERESTS IN PREVENTING DISCLOSURE?

III.  SHOULD THE SUBPOENA BE QUASHED AS A RESULT OF A CONSENT ORDER ENTERED BY THE BOARD AFTER APPELLANTS NOTED THEIR APPEAL?

---

1. Because the name of a licensee is confidential while the Board's investigation is in progress, we will use this pseudonym when referring to the social worker.

For the reasons that follow, we answer "no" to each question and therefore affirm the judgment of the circuit court.

## Background

The Social Worker Board received a complaint that accused Ms. F., appellants' former social worker, of failing to report that Mr. Doe had sexually abused a minor. The complaint included newspaper articles about Mr. Doe's June 2001 convictions of child abuse and third degree sex offenses involving his granddaughter. According to the articles, Ms. F., who had been counseling the appellants, did not report Mr. Doe's abuse to the authorities.[2]

The Maryland Social Workers Act (Social Worker Act)[3] provides that a social worker may be disciplined for failure to report suspected child abuse.[4] Pursuant to its statutory authority,[5] the Board initiated an investigation of the complaint and, on April 25, 2002, subpoenaed Ms. F.'s complete patient files for Mr. and Mrs. Doe for the year 1998. Appellants subsequently moved to quash the subpoena and to seal the record. Judge Allison ultimately (1) granted appellants' Motion to Seal the Record, but (2) denied appellants' Motion to Quash the Subpoena.[6]

## Discussion

### I

 Appellants argue that Judge Allison abused her dis-

---

**2.** The abuse was reported when appellants' granddaughter informed her pediatrician and he contacted the Department of Social Services.

**3.** MD. CODE (2000), HEALTH OCC §§ 19–101 to –502. The Maryland Health Occupations Article will hereinafter be referred to as "HO."

**4.** See HO § 19–311(15).

**5.** See HO § 19–312(c).

**6.** Judge Allison issued an Order on October 1, 2002, granting a stay of the August 23rd Order and any enforcement of the Subpoena pending this appeal.

cretion by denying their Motion to Quash.[7] This assertion presents three separate questions, the first of which pertains to the status of the records, *i.e.* whether the records sought by the Subpoena contain information that is confidential, privileged, or both. The second question is whether the Board has the right to subpoena mental health records that are confidential under the Confidentiality of Medical Records Act (Confidentiality Act).[8] The third question is whether the Board is authorized to subpoena mental health records that are privileged under the statutorily created social worker-client privilege.[9] We answer "yes" to all three questions.

## Status of Appellants' "Patient File"

There is a difference between a "confidential" medical record and a "privileged" communication. *Shady Grove Psychiatric Group v. State*, 128 Md.App. 163, 178–79, 736 A.2d 1168 (1999). Information can be confidential and, at the same time, non-privileged. *Id.* 128 Md.App. at 179, 736 A.2d 1168. "Privilege is the legal protection given to certain communications and relationships, *i.e.*, attorney-client privilege, doctor-patient privilege, and marital privilege. Confidential is a term used to describe a type of communication or relationship." *B.F.G. Employees Credit Union, Inc. v. Kopco & Co.*, 2002 Ohio 2202. Privilege statutes must be narrowly construed. *Reynolds v. State*, 98 Md.App. 348, 368, 633 A.2d 455 (1993).

---

7. A court's order denying a motion to quash a subpoena is ordinarily reviewed under an abuse of discretion standard. *WBAL–TV Div., Hearst Corp. v. State*, 300 Md. 233, 247, 477 A.2d 776 (1984). An abuse of discretion is present "where no reasonable person would take the view adopted by the [trial] court." *Metheny v. State*, 359 Md. 576, 604, 755 A.2d 1088 (2000) (quoting *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312, 701 A.2d 110 (1997)). "Thus, where a trial court's ruling is reasonable, even if we believe it might have gone the other way, we will not disturb it on appeal." *Id.*

8. MD. CODE (2000) HEALTH-GEN. §§ 4–301 through –309. Hereinafter, the Health General Article will be referred to as "HG."

9. MD. CODE (2000) CTS. & JUD. PROC. § 9–121(b). Hereinafter, the Courts and Judicial Proceedings Article will be referred to as "C.J."

■ All mental health records are made confidential by § 4–307 of the Confidentiality Act. *Reynolds,* 98 Md.App. at 365, 633 A.2d 455. Appellee subpoenaed patient files that contained information which falls within the category of "transmission[s]" that the legislature intended to protect. The records are therefore confidential and—unless disclosure is required by another applicable statute or constitutional provision—shielded from disclosure by the Confidentiality Act, which ensures that "any oral, written, or other transmission in any form or medium" be kept confidential if it "is entered in the record of a patient or recipient," or "identifies or can readily be associated with the identity of a patient or recipient," and "relates to the health care of the patient or recipient." HG §§ 4–302(a) and 4–301(g)(1). "The [Confidentiality] Act makes the medical record and even the acknowledgment of a medical record confidential." *Shady Grove,* 128 Md.App. at 179, 736 A.2d 1168.

■ The social worker-client privilege protects "communications made while the client was receiving counseling or any information that by its nature would show that such counseling occurred." C.J. § 9–121(b). "Records of statements made by the patient during group therapy sessions, records of statements made by the patient to other patients during a hospital stay, and records of medication prescribed for the patient are not privileged under C.J. § 9–109." *Reynolds,* 98 Md.App. at 368, 633 A.2d 455; *Dr. K. v. State Board of Physician Quality Assurance,* 98 Md.App. 103, 116, 632 A.2d 453 (1993), *cert. denied,* 334 Md. 18, 637 A.2d 1191, *cert. denied,* 513 U.S. 817, 115 S.Ct. 75, 130 L.Ed.2d 29 (1994). Information that only "divulges the identity of . . . patients and their appointment history" but "does not relate to diagnosis and treatment of mental or emotional disorder[s] . . . is not protected by the patient-psychiatrist privilege." *Shady Grove,* 128 Md.App. at 179, 736 A.2d 1168.

Unlike the records subpoenaed in *Shady Grove,* the records in the case at bar relate to the treatment and diagnosis of Mr. and Mrs. Doe. Thus, for the purposes of this appeal, we

consider the information contained in those records to be both confidential and privileged.

### The Board's Subpoena Power as a "Medical Review Committee"

HO § 19–102 provides that "[t]he General Assembly finds that the profession of social work profoundly affects the lives, health, safety, and welfare of the people of this State" and further that the Social Worker Act was enacted

"to protect the public by:

(1) Setting minimum qualification, education, training, and experience standards for the licensing of individuals to practice social work; and

(2) Promoting and maintaining high professional standards for the practice of social work. . . ."

HO § 1–401(b)(1) defines a "Medical review committee" as "A regulatory board or agency established by State or federal law to license, certify, or discipline any provider of health care. . . ."

HO § 1–401(c) provides that a "Medical review committee" is obligated to

(1) [evaluate] and [seek] to improve the quality of health care provided by providers of health care;

(2) [evaluate] the need for and the level of performance of health care provided by providers of health care;

(3) [evaluate] the qualifications, competence, and perform- ance of providers of health care; or

(4) [evaluate] and [act] on matters that relate to the disci- pline of any provider of health care.

In Maryland, a social worker is a "health care provider." HG § 4–301(h)(1) defines "health care provider" as "[a] person licensed, certified, or otherwise authorized under the Health Occupations Article. . . ." HO § 19–301(a)(1) requires that an individual be "[l]icensed by the [Board of Social Work Examin- ers] before the individual may practice social work in this State while representing oneself as a social worker. . . ."

Because they are health care providers, social workers have a duty to comply with the requirements of HG § 4–306(b)(4), which provides:

"(b) A health care provider shall disclose a medical record without the authorization of a person in interest:

\* \* \*

(4) Notwithstanding any privilege in law, as needed, to a medical review committee as defined in § 1–401 of the Health Occupations Article. . . ."

From our review of the applicable statutes, we are persuaded that appellants do not have a statutory right to an order quashing the subpoena at issue.

### The Power to Subpoena "Confidential" Medical Records

The Confidentiality Act requires a health care provider "to keep the medical record of a patient or recipient confidential" and to disclose the medical record only as provided by the Act or as otherwise provided by law. HG § 4–302. Section 4–307(b) of HG states: "The disclosure of a medical record developed in connection with the provision of mental health services shall be governed by the provisions of this section in addition to the other provisions of [the Confidentiality Act]." The Confidentiality Act also compels a health care professional, including a social worker, to disclose mental health records to a licensing board pursuant to the disciplinary investigation of a social worker. HG § 4–306(b)(2) states:

(b) *Permitted disclosures.* A health care provider shall disclose a medical record without the authorization of a person in interest:

(2) Subject to the additional limitation for a medical record developed primarily in connection with the provision of mental health services in § 4–307 of this subtitle, to health professional licensing and disciplinary boards, in accordance with a subpoena for medical records for the sole purpose of an investigation regarding:

(i) Licensure, certification, or discipline of a health professional....

More specifically, HG § 4–307(k)(1)(vi)(1) states:

A health care provider shall disclose a medical record **without the authorization of a person in interest:** In accordance with a subpoena for medical records on specific recipients ... [t]o health professional licensing and disciplinary boards for the sole purpose of an investigation regarding licensure, certification, or discipline of a health professional....

(Emphasis added).

■ It is evident that the legislature intended to provide the Board with authority to subpoena confidential patient records. In *Shady Grove, supra*, as a result of a "hate crime" that occurred near the office of a mental health professional group, the State issued a subpoena for information that included names, addresses, dates of birth, phone numbers, and appointment histories of patients who had appointments around the time of the crime.[10] Applying HG §§ 4–306(b)(7) and 4–307(c) of the Confidentiality Act,[11] we granted Shady Grove's Motion to Quash the Subpoena at issue on the ground that the State had failed to comply with § 4–306(b)(7), which requires written procedures for protecting the confidentiality of the record. *Shady Grove*, 128 Md.App. at 179, 736 A.2d 1168.

---

10. This subpoena was issued pursuant to Maryland Code Ann. (1957, 1998 Repl.Vol.), Art. 10 § 39A which gave the State the subpoena power to obtain certain records pursuant to a criminal investigation.

11. Section 4–306(b)(7) provides that a health care provider shall disclose a medical record, without the authorization of a person in interest, **to law enforcement agencies to further an investigation or prosecution,** pursuant to a subpoena, warrant, or court order for the purposes of investigating and prosecuting criminal activity, provided that the law enforcement agencies have written procedures to protect the confidentiality of the records. Section 4–307(c) mandates that when a "medical record developed in connection with mental health services is disclosed without the authorization of a person in interest, only the information in the record relevant to the purpose for which disclosure is sought may be released."

Appellants argue that *Shady Grove, supra,* supports their position that the circuit court erred in denying their motion to quash the subpoena for the records at issue. *Shady Grove* is, however, inapplicable to the subpoena at issue here. Although the written procedures requirement applies to subpoenas issued pursuant to criminal investigations, there is no such requirement for subpoenas issued by a health care licensing/disciplinary board. HG §§ 4–306(b)(2) and 4–307(k)(1)(vi)(1).

### The Power to Subpoena Records Protected by the Social Worker—Client Privilege

Section 9–121(b) of the Courts and Judicial Proceedings Article, titled *Communications between licensed social worker and client,* states:

> **Unless otherwise provided,** in all judicial or administrative proceedings, a client has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications made while the client was receiving counseling or any information that by its nature would show that such counseling occurred.

(Emphasis added). In light of the language "unless otherwise provided," § 9–121(b) cannot be interpreted without reference to related statutes that are also relevant to the scope of the social worker-client privilege.

Section 5–704(a)(1) of the Family Law Article, in pertinent part, provides:

> **Notwithstanding any other provision of law, including any law on privileged communications,** each health practitioner, police officer, or educator or human service worker, acting in a professional capacity, who has reason to believe that a child has been subjected to:
>
> (i) abuse, shall notify the local department or the appropriate law enforcement agency; or
>
> (ii) neglect, shall notify the local department; . . . .

MD. CODE (1999), FAM. LAW § 5–704(a)(1) (emphasis added).[12]

Appellants argue that the testimonial privilege between social worker and client abrogates and supercedes the health professional's statutory duty to provide a licensing/disciplinary board with patients' mental health records in response to a subpoena issued by that board in the course of a disciplinary investigation. According to appellants, C.J. § 9–121(b) creates an absolute privilege that trumps the Board's subpoena power. We disagree.

The Maryland General Assembly has authorized the Social Worker Board to investigate complaints of possible violations of the Social Worker Act, which contains an extensive list of violations for which a social worker can be disciplined. HO § 19–311. In this case, the Board received a complaint that a licensed social worker, Ms. F., had reason to believe that a child had been subjected to abuse and failed to notify the appropriate agency. Such an omission would constitute a violation of HO § 19–311(15), which states:

> [T]he Board may deny a license to any applicant, fine a licensee, reprimand a licensee, place any licensee on probation, or suspend or revoke a license if the applicant or licensee:
>
> (15) Knowingly fails to report suspected child abuse in violation of § 5–704 of the Family Law Article.

### Resolving the Conflict between the Board's Statutory Subpoena Power and Appellants' Statutory Protections Against Disclosure

█ The legislature has given the Board the authority to hold hearings and issue subpoenas:

---

**12.** The language, "[n]otwithstanding any other provision of law, including any law on privileged communications," of § 5–704(a)(1) of the Family Law Article expresses the Legislature's intention that adherence to this reporting requirement overcomes any potential assertions of testimonial privilege. Indeed, this Court has previously stated: "Statements about child abuse are not privileged and must be reported by health care providers, 'notwithstanding any other provision of law, including any law on privileged communications.'" *Reynolds*, 98 Md. App. at 369, 633 A.2d 455 (quoting Fam. Law § 5–704(a)).

"*Subpoenas and oaths.*—Over the signature of an officer or the administrator of the Board, the Board may issue subpoenas and administer oaths in connection with any investigation under this title and any hearings or proceedings before it."

HO § 19–312(c).

■ "It is well settled that when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute." *Farmers & Merchants National Bank v. Schlossberg*, 306 Md. 48, 63, 507 A.2d 172 (1986) (citations omitted). The Confidentiality Act establishes the confidentiality of medical records. HG § 4–302. While C.J. § 9–121 establishes the social worker-client privilege, the Social Worker Act provides the Board with subpoena power over the records of licensed social workers when investigating a violation of that Act, HO § 19–312(c). Under HG § 4–307(k)(1)(vi)(1) of the Confidentiality Act, a social worker must comply with a records subpoena issued by the Board whether or not the social worker's client objects to the disclosure of the client's records. As HO § 19–312(c) and HG § 4–307(k)(1)(vi)(1) are more specific, we therefore conclude that, (1) the Legislature intended that social worker-client records be confidential and privileged under the Confidentiality Act and C.J. § 9–121, but (2) the Legislature never intended that the client of a social worker whose records have been subpoenaed by the Board would be entitled to rely upon either the Confidentiality Act or C.J. § 9–121 as a basis for prohibiting the Board from obtaining the client's records.

## II

In support of their constitutional challenge, appellants point out that HG § 4–307(k)(6) "[does] not preclude a . . . person in interest from asserting in a motion to quash or a motion for a protective order any constitutional right or other legal authority in opposition to disclosure." According to appellants, Judge Allison erred when she held that the interest of the State in subpoenaing these types of records in the course of an investi-

gation outweighed appellants' constitutional privacy interests. We disagree.

" '[T]he right of privacy is protected by the federal constitution and ... where the right is applicable, regulation limiting it must be justified by a compelling state interest.' " *Dr. K.,* 98 Md.App. at 111, 632 A.2d 453 (quoting *Montgomery County v. Walsh,* 274 Md. 502, 512, 336 A.2d 97 (1975), *appeal dismissed,* 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976)). The constitutional protection of the right to privacy "extends to two types of privacy interests: 'one is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.' " *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3rd Cir.1980) (quoting *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (footnotes omitted)). The case at bar deals with the protection against disclosure of a personal matter.

The United States Constitution protects a patient's right to privacy in his or her medical records. *Dr. K.,* 98 Md.App. at 111–12, 632 A.2d 453 (citing *Whalen v. Roe, supra).* That right, however, is not absolute. "The individual privacy interest in the patients' medical records must be balanced against the legitimate interests of the state in securing the information contained therein." *In re Search Warrant (Sealed),* 810 F.2d 67, 71–72 (3rd Cir.1987), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3233, 97 L.Ed.2d 739 (1987). "In the cases in which a court has allowed some intrusion into the zone of privacy surrounding medical records, it has usually done so only after finding that the societal interest in disclosure outweighs the privacy interest on the specific facts of the case." *Westinghouse,* 638 F.2d at 578.

The *Westinghouse* court identified several factors to consider in balancing (1) the employees' interests in not having certain of their health records turned over to the National Institute for Occupational Safety and Health (NIOSH) without their authorization, and (2) the societal interest in providing the government with this information so it could develop

treatment programs and control public health threats. *Id.* at 572–73. These factors include: the type of record requested, the information contained therein, the potential for harm from any subsequent nonconsensual disclosure, the injury that disclosure would cause in disclosure to the relationship for which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the government's need for access, and the presence or absence of an express statutory mandate, an articulated public policy, or other public interests indicating the need for access to the records at issue. *Id.* at 578. We shall apply the *Westinghouse* factors to the case at bar.

### *Type of record and information contained therein*

The subpoena in this case directed a social worker to deliver "the complete patient file" for Jane and John Doe "for the calendar year 1998." It is obvious that the records at issue contain information of a highly private nature.

### *The potential for harm in subsequent nonconsensual disclosure*

▮ Even though Mr. Doe has been convicted of criminal charges, the records at issue are potentially harmful to the Does. Because of the nature of the charges being investigated, and the potential for embarrassment if the records were subsequently disclosed, without the consent of the interested parties, the "potential for harm" is present.

### *The injury to the relationship for which the record was generated*

▮ Even though the professional relationship between Ms. F. and the Does has now terminated, the social worker-client relationship is a very personal one and any disclosure of records created within the confines of that environment of trust could conceivably damage any such relationship.

### *The adequacy of safeguards to prevent unauthorized disclosure*

Maryland law provides an abundance of safeguards to prevent the unauthorized redisclosure of the Does' records once the Board has obtained them. Section 4–302(a) of the Confidentiality Act requires that health care providers keep medical records confidential, and allows disclosure only as provided by the Act or Maryland law. Section 4–302(d) expressly prohibits the redisclosure of health records by those to whom the records are disclosed:

> *Redisclosure.*—A person to whom a medical record is disclosed may not redisclose the medical record to any other person unless the *redisclosure* is:
>
> (1) Authorized by the person in interest;
>
> (2) Otherwise permitted by this subtitle;
>
> (3) Permitted under Article 88A, § 6(b) of the Code; or
>
> (4) Directory information.

HG § 4–302(d).

There is no other provision in the subtitle that permits redisclosure of mental health records obtained by the Board. Moreover, under HG § 4–309, the disclosure of a medical record in violation of the Confidentiality Act subjects the violator to a criminal fine and to civil damages.[13]

Although these safeguards may not be fail-proof, security precautions that are substantial but "not foolproof" are constitutionally adequate. *Schachter v. Whalen,* 581 F.2d 35, 37 n. 2 (2nd Cir.1978). The United States District Court for the

---

13. In addition to these safeguards, § 10–617(h)(1) of the State Government Article (SG) prohibits the inspection of information about the licensing of an individual in a profession. MD.CODE (1999), STATE GOV'T § 10–617(h)(1). Sections 1–401(a)(3) & (b)(1) of HO define the Board of Social Workers as a medical review committee. Section 1–401(d)(1) of HO states that "the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action." Furthermore, the State Open Meetings Law does not apply to the Social Worker Board when it is carrying out a quasi-judicial function, defined as a determination of a contested case under the Administrative Procedure Act. SG §§ 10–502(i) and 10–503.

District of Maryland has noted that "Maryland statutes provide an adequate safeguard against unauthorized disclosure [of medical records]...." *Patients of Dr. Solomon v. Board of Physician Quality Assurance,* 85 F.Supp.2d 545, 547 (D.Md. 1999).

### The government's need for access

■ To deny the Board access to patient files is to deny it the ability to carry out its legislative mandate. If the Social Worker Board receives a complaint that a social worker failed to notify the appropriate agency of his/her reason to believe that a child had been subjected to abuse, a lack of access to the worker's records would "effectively foreclose any meaningful investigation into that conduct and any basis for disciplinary action." *Dr. K.,* 98 Md.App. at 118, 632 A.2d 453.

### Express statutory mandate, articulated public policy, and/or other public interest

■ There is express statutory authority mandating the disclosure of records to the Board. "[D]isclosures of private medical information to ... public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient." *Whalen v. Roe,* 429 U.S. at 602 & n. 29, 97 S.Ct. 869 (citing statutory reporting requirements including those related to child abuse). "Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy." *Id.* at 602, 97 S.Ct. 869.

A health licensing board is "required" to investigate complaints. *Board of Physician Quality Assurance v. Levitsky,* 353 Md. 188, 190–91, 725 A.2d 1027 (1999). There is a "compelling public interest" in completing these investigations without creating opportunities for the health provider, through his or her patients, to stall the proceedings. *See Patients of Dr. Solomon,* 85 F.Supp.2d at 548.[14]

---

**14.** In *Solomon,* a group of Dr. Solomon's patients challenged the subpoena issued by the State Board of Physician Quality Assurance for

In *Dr. K., supra*, the State Board of Physician Quality Assurance (Physician Board) received formal complaints about Dr. K., a psychiatrist licensed to practice in Maryland, and his behavior in relation to a former patient of his, patient A. In the course of its investigation, the Physician Board investigated and subpoenaed Dr. K.'s records relating to his treatment of patient A. Dr. K. filed a motion to quash the subpoena, which was ultimately denied.[15] On appeal, Dr. K. and patient A raised only one question with this Court: "Does a patient's constitutional right to privacy bar the disclosure of mental health records to the Board of Physician Quality Assurance when the patient asserts such a right upon the patient's physician being subpoenaed to produce those records to the Board of Physician Quality Assurance?" *Id.* at 107, 632 A.2d 453. Noting that a patient's privacy interests are not absolute, we held that the legislature made a clear policy decision to require compliance with Board subpoenas without patient consent. *Id.* at 119, 632 A.2d 453.

After utilizing the analytical framework established in *Westinghouse*,[16] we hold that Judge Allison did not err or

---

her patients' medical records. The court denied the patients' request for a temporary restraining order preventing disclosure of the records to the Board. *Id.* at 548. In doing so, it cited to the "Board's mission of identifying physicians who engage in immoral or unprofessional conduct, and the Board's goal of preventing future misconduct...." *Id.*

**15.** The circuit court granted Dr. K.'s first motion to quash the subpoena and the Physician Board moved to rescind the order and requested a hearing on the motion's merits. The request for a hearing was granted. The Physician Board filed an opposition to Dr. K.'s motion to quash and filed its own motion to compel compliance with the subpoena. The court subsequently denied the motion to quash the subpoena, but stayed enforcement for thirty days pending a possible appeal. Patient A then filed a Motion for Reconsideration, raising the constitutional issue of her right to privacy and requesting an order further staying the final judgment's effect. Both motions were denied.

**16.** In *Dr. K.*, we relied on the *Westinghouse* case for the framework it provided for balancing the competing rights and interests at issue. *See*

abuse her discretion and we affirm the circuit court's Order denying appellants' Motion to Quash the Subpoena. The relevant statutes and case law make it clear that the legislature has concluded that (1) the public's interest in regulating health care professionals is best served by providing the Board with the power to subpoena the records at issue, and (2) it would create an absurd result to mandate that a social worker report child abuse, while at the same time, permit the abuser and/or the social worker to prevent the Board from investigating a complaint of failure to report the suspected abuse.

## III

■ After the parties had filed their briefs in this Court, but before the argument date, (1) appellants moved to supplement the record with a redacted Consent Order, and (2) appellee notified us that it would not oppose that motion, provided that the record be supplemented with an unredacted Consent Order. According to appellants, because the Board has agreed that it will not attempt to impose any further discipline upon Ms. F. as a result of Ms. F.'s failure to report Mr. Doe's abuse, there is no valid reason why the subpoena at issue should be enforced at this point in time. According to appellee, because the Consent Order expressly provided that the Board would continue its effort to obtain judicial enforcement of the subpoena, the Consent Order does not resolve the issue of whether appellants are entitled to an order quashing the subpoena for their records.

We are persuaded that the case at bar is not moot merely because Ms. F. faces no additional discipline for her failure to report her former client's abuse. Moreover, a case that involves "frequently recurring issues of public importance ... ought to be decided." *Rutherford v. Rutherford*, 296 Md. 347, 352, 464 A.2d 228 (1983). Because it has a statutory duty to promote and maintain high professional standards for the

*Dr. K.*, 98 Md.App. at 114–20, 632 A.2d 453 (citing *Westinghouse*, 638 F.2d at 578–80).

practice of social work, the Board is entitled to examine records that will assist the Board in developing procedures that are likely to ensure that social workers fulfill their obligation to report suspected child abuse. For these reasons, appellants have neither a statutory nor a constitutional right to quash the subpoena at issue.

**JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.**