*St. Luke Institute, Inc. v. Andre Jones*, No. 3331, Sept. Term, 2018
Opinion by Shaw Geter, J.

**Civil – Confidentiality of Medical Records Act – Mental Health Records – Production to Third Party – In-Camera Review**

When ordering a medical provider to produce a patient's confidential medical health records, the party seeking the records must show some connection between the records sought, the issue before the court, and the likelihood that information relevant to the trial would be discovered. Circuit court did not err or abuse its discretion in ordering medical provider to produce deceased patient's mental health records for a civil action against patient's former employers alleging negligent supervision and/or hiring of patient, where party seeking records provided evaluation reports performed by medical provider and sent to patient's former employers that may have indicated patient was at a greater risk of sexually abusing children.

Circuit court did not err or abuse its discretion in ordering medical provider to produce patient's confidential medical health records to foreign court. However, pursuant to the Confidentiality of Medical Records Act, the circuit court was required to perform an in-camera review of the records to order the production of only that portion of the records the court deemed relevant to the reason for which they were sought. Any records determined by the court to be relevant to a claim or defense in the underlying action should be produced, while that portion of the records "not even arguably relevant and usable" should remain confidential and not subject to discovery.

Circuit Court for Prince George's County
Case No. CAL18-40657

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 3331

September Term, 2018
_____

ST. LUKE INSTITUTE, INC.

v.

ANDRE JONES
_____

Meredith,
Shaw Geter,
Salmon, James P.
     (Retired Judge, Specially Assigned),

JJ.
_____

Opinion by Shaw Geter, J.
_____

Filed:  September 12, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from an order of the Circuit Court for Prince George's County requiring that St. Luke Institute, Inc., appellant, produce the mental health records of Brother Edward Anthony Holmes to the Superior Court of the Commonwealth of Massachusetts. In 2017, Andre Jones, appellee, brought a civil lawsuit, currently pending in the Commonwealth of Massachusetts, naming the Roman Catholic Archbishop of Boston and the Congregation of Sacred Hearts as defendants. The suit alleged that Jones, as a minor, was repeatedly sexually assaulted and sexually abused by Brother Holmes between 1978 and 1982. The allegations include causes of action for negligent hiring and negligent supervision of Holmes. During discovery in that lawsuit, it became known that Brother Holmes underwent psychotherapy at St. Luke Institute in the early 1990's.

Jones filed with the circuit court a motion requesting the court order St. Luke Institute to produce Brother Holmes' mental health records. St. Luke Institute filed a motion in opposition. The circuit court issued a memorandum opinion and order directing St. Luke Institute to transfer Brother Holmes' entire mental health record under seal to the Clerk of the Massachusetts Superior Court.

St. Luke Institute then moved the circuit court to reconsider its ruling and vacate the order or, alternatively, to stay the order pending appeal. The circuit court denied St. Luke Institute's motion. St. Luke Institute noted this appeal, and presents the following questions for our review, which we have rephrased and consolidated for convenience:[1]

---

[1] St. Luke Institute originally presented the following questions for our review: 1. What does the Confidentiality of Medical Records Act require when the production of mental health records are requested? 2. When is there a compelling State interest to overcome the right of privacy in medical (here mental health) records? 3. How does a

1) Did the circuit court err or abuse its discretion in ordering St. Luke Institute to produce Brother Holmes' mental health records?

2) Did the circuit court err in ordering Brother Holmes' entire mental health record be filed under seal to the Superior Court of the Commonwealth of Massachusetts?

3) How does a Maryland trial court determine what confidential information is to be released when requested in discovery?

## BACKGROUND

A. *The Underlying Massachusetts Action.*

In 2017, Andre Jones filed a civil lawsuit (the "Massachusetts Action"), as lead plaintiff, in the Massachusetts Superior Court, Trial Division (the "Massachusetts Court"), naming as defendants the Roman Catholic Archbishop of Boston and the Congregation of Sacred Hearts.[2]  The Massachusetts Action alleges, in part, that Jones, as a minor, after having been removed from the custody of his parents and placed by the Commonwealth of Massachusetts in the Nazareth Child Care Center in Jamaica Plain, Massachusetts ("Nazareth") and while a Nazareth resident, suffered repeated sexual assault and abuse by

---

Maryland trial court determine what information is to be released when records that are made confidential by statute (here, mental health records) are to be produced? 4. Who makes the release decision – can a Maryland trial court delegate its responsibilities under the Confidentiality of Medical Records Act and the standards for production mandated by the Court of Appeals for confidential material to a foreign court simply because the request is initiated from a foreign court?

[2]  Brother Holmes was not named in the lawsuit, as he was deceased at the time the complaint was filed.

Brother Holmes, a Nazareth counselor.[3]  The complaint included causes of action for negligent hiring and negligent supervision of Holmes.

Documents produced in discovery by the Congregation of Sacred Hearts noted that Brother Holmes had underwent psychotherapy at St. Luke Institute, Inc. ("SLI") in the early 1990's.  SLI, located in Maryland, is a "Catholic organization with 40 years of experience treating Catholic clergy" and "offers a full range of psychological screening, treatment and education services for catholic clergy."  According to the documents produced by the Congregation of Sacred Hearts, two psychiatric evaluation reports on Brother Holmes were written by SLI employees, respectively dated June 28, 1991 and November 8, 1993.

The produced documents highlighted and summarized a "caution" contained in the 1993 report generated by SLI, stating, "There are no reported signs that [Brother Holmes] has been sexually inappropriate.  However, we would caution [Holmes] and his order: there are many signs of risk that should not be lightly dismissed."  The report also noted that Holmes "[h]a[d] not worked through his experience of being molested as a child."

After the existence of the 1991 and 1993 reports became known to Jones, he requested that the reports and associated records be produced by the named parties.  Jones was informed that the mental health evaluation reports had been destroyed by the Roman Catholic Archbishop of Boston and the Congregation of Sacred Hearts in the early 2000's.

---

[3]  There are three other consolidated companion cases pending along with Jones' case in the Massachusetts Court.  Each plaintiff alleges similar child sexual assault and abuse perpetrated upon them by Brother Holmes while each was a minor and resident of Nazareth.

In 2006, Brother Holmes' abuse of minors at Nazareth became public knowledge. He was arrested, charged, and pled guilty to seventeen counts involving sexual assault of minors while they were residents at Nazareth. On April 6, 2011, Brother Holmes died.

### B. *The Action in the Circuit Court.*

Jones, pursuant to a Letter of Rogatory of the Massachusetts Court, sought a subpoena from the Circuit Court for Prince George's County requesting SLI produce Brother Holmes' mental health records. SLI opposed the motion, arguing that the subpoena was improperly before the court pursuant to Md. Code (2000, 2009 Repl. Vol.), Health General ("H.G."), § 4-307.

Jones then filed with the circuit court a request for an Order to Produce Mental Health Records. SLI filed a motion opposing the request, arguing that the circuit court would need to examine the pleadings in the Massachusetts Action to properly determine whether Brother Holmes' mental condition had been raised and whether such evidence was relevant.

In a memorandum opinion, dated January 23, 2019, the circuit court wrote:

This court does not believe that two separate courts are required to review what are likely extensive pleadings in order to adjudicate this discovery request. To do so is contrary to the interests of judicial economy, especially as the [Massachusetts Court] can and will be the ultimate gatekeeper of evidence at trial.

Furthermore, given the evidence that has already been provided to this court, evidence of whether Brother Holmes' propensity towards sexual assault was known to his employer is likely within the records sought. In balancing the factors considered in determining whether a patient's right to privacy in their health records could be overcome, there is a compelling state interest in aiding [Jones] to obtain the requested records. This case is one of

4

the predatory sexual assault of minors, and there are multiple alleged victims, at least one of whom was sent to this institution by the state itself. [Jones] in this instant case was taken from the custody of his parents by the Commonwealth of Massachusetts, and place[d] in the care of Brother Holmes. Lastly, the records requested do not at this time injure or embarrass Brother Holmes, who is now deceased and who previously admitted to rape and sexual assault of minors. There are thus compelling factors towards ordering the release of this requested information, with the [Massachusetts Court] as gatekeeper and safeguard for [SLI].

In an order accompanying the memorandum opinion, the circuit court directed SLI to produce, under seal, Brother Holmes' mental health records to the Clerk of the Massachusetts Court.

SLI filed with the circuit court a motion for reconsideration and request to vacate the January 23, 2019 order or, alternatively, to stay the order pending appeal. The circuit court denied the motion in total. SLI timely appealed the circuit court's decision and filed with this Court a motion to stay the production of the mental health records pending the appeal, which this Court granted.

## STANDARD OF REVIEW

Ordinarily we review a trial court's ruling on a motion to quash a subpoena for an abuse of discretion. *See Doe v. Maryland Bd. of Social Workers*, 154 Md. App. 520, 527–28, 840 A.2d 744, 749 (2004); *WBAL-TV Div., Hearst Corp. v. State*, 300 Md. 233, 246, 477 A.2d 776, 783 (1984) (holding no abuse of discretion in denial of TV station's motion, based on a qualified First Amendment privilege, to quash summons by the State to produce unbroadcast portions of a videotaped interview with a criminal defendant for possible use at trial). Generally, an abuse of discretion occurs where "no reasonable person would take

5

the view adopted by the [trial] court." *Metheny v. State*, 359 Md. 576, 604, 755 A.2d 1088, 1104 (2000) (internal quotations omitted) (brackets in original). However, SLI contends the circuit erred as a matter of law by releasing Brother Holmes' entire medical health record to the Massachusetts Court rather than limiting its release to the portion of the records deemed relevant to the Massachusetts Action as required by H.G. §§ 4-301 *et seq.*, the Confidentiality of Medical Records Act (the "Act"). And, when the ruling "involves an interpretation and application of Maryland statutory and case law," as it did here, "we must determine whether the trial court's conclusions are legally correct under a *de novo* standard of review." *Johnson v. Francis*, 239 Md. App. 530, 542, 197 A.3d 582, 590 (2018) (internal quotations omitted).

## DISCUSSION

### I. Did the circuit court err or abuse its discretion in ordering SLI to produce Brother Holmes' mental health records?

Pursuant to the Act, the medical records of a patient are confidential and, ordinarily, a health care provider may not disclose a patient's record to a third party without the patient's permission. H.G. § 4-302(a). However, "[a] health care provider shall disclose a medical record without the authorization of a person in interest . . . in accordance with . . . a court order that appears on its face to have been issued on lawful authority." H.G. § 4-306(a) and (b)(6). Thus, the circuit court had the authority to order SLI to produce Brother Holmes' confidential mental health records.[4]

---

[4] No party disputes that the requirements for the unauthorized disclosure of a medical record in accordance with compulsory process, i.e. a court order, set forth in H.G. § 4-306(b)(6)(i)–(ii), were met.

We now consider whether the circuit court abused its discretion in ordering SLI to produce the mental health records. "In Maryland, the rules of discovery, governed by Chapter 400 of Title 2 of the Maryland Rules, 'were deliberately designed to be broad and comprehensive in scope.'" *Gallagher Evelius & Jones, LLP v. Joppa Drive-Thru, Inc.*, 195 Md. App. 583, 595, 7 A.3d 160, 167 (2010) (quoting *Ehrlich v. Grove*, 396 Md. 550, 560, 914 A.2d 783, 790 (2007)) (internal quotations omitted). "That broad scope of discovery is described as allowing [a] party [to] obtain discovery regarding any matter that is not privileged . . . if the matter sought is relevant to the subject matter involved in the action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." *Id.* (quoting *Falik v. Hornage*, 413 Md. 163, 182, 991 A.2d 1234, 1246 (2010) (quoting Md. Rule 2-402)).

However, where the information sought to be discovered is confidential, as Brother Holmes' mental health records are here, an additional hurdle is present. In *Goldsmith v. State*, 337 Md. 112, 651 A.2d 866 (1995), the Court of Appeals stated,

> To be sure, a party to ongoing litigation may subpoena, without advance notification having to be given to the other party, a third party's records for use at trial. When, however, the records sought are "confidential," before disclosure will be ordered, the moving party must show, usually at a hearing, some connection between the records sought, the issue before the court, and the *likelihood* that information relevant to the trial would be discovered.

*Id.* at 127–28, 651 A.2d at 874 (quoting *Zaal v. State*, 326 Md. 54, 83, 602 A.2d 1247, 1261 (1992)) (emphasis in original). It is the party seeking disclosure of the confidential material that bears the burden of establishing the need for pre-trial disclosure. *Id.* at 128, 651 A.2d at 874.

Jones met his burden in establishing the need for pre-trial disclosure of Brother Holmes' mental health records. Jones informed the circuit court of the two mental health evaluations of Brother Holmes conducted by SLI in 1991 and 1993. Reports from these evaluations, which the Congregation of Sacred Heart freely disclosed to Jones, indicated that Holmes presented "many signs of risk that should not be lightly dismissed." The reports evidenced that Holmes disclosed to SLI that he had been "molested as a child," and that Holmes had "not worked through" that experience. Further notes from a treatment plan meeting with Holmes and SLI employees indicated that he had had a "suspicious nature," that "[his] repression [was] not a good thing," and that he "need[ed] to continue therapy, possibly for a long time."

The mental health records are likely relevant to the Massachusetts Action. The Massachusetts Action alleged Brother Holmes' former employers negligently hired and supervised him. The former employers' knowledge of Holmes' mental state prior to his becoming a member of the Congregation of Sacred Heart and during his assignment at Nazareth are relevant to determining whether he was hired and/or supervised in a negligent manner. As we see it, the circuit court did not abuse its discretion in finding that, based on the two reports and averments made by Jones, Holmes' mental records with SLI were likely relevant to the Massachusetts Action and subject to discovery.

SLI argues the circuit court erred in ordering it to produce the mental health records because the records were privileged. In *Doe v. Maryland Bd. of Social Workers*, 154 Md. App. 520, 840 A.2d 744 (2004), we addressed the distinction between 'confidential' and 'privileged' material:

8

There is a difference between a 'confidential' medical record and a 'privileged' communication. Information can be confidential and, at the same time, non-privileged. Privilege is the legal protection given to certain communications and relationships, *i.e.*, attorney-client privilege, doctor-patient privilege, and marital privilege. Confidential is a term used to describe a type of communication or relationship. Privilege statutes must be narrowly construed.

*Id.* at 528, 840 A.2d at 749 (internal quotations and citations omitted). "The burden of substantiating non-discoverability is upon the party to whom the discovery request is directed . . . and the burden cannot be met by 'conclusory allegations or mere assertions.'" *Gallagher Evelius & Jones, LLP*, 195 Md. App. at 598, 7 A.3d at 168 (quoting *Ashcraft & Gerel v. Shaw*, 126 Md. App. 325, 350, 728 A.2d 798, 811 (1999)).

Maryland acknowledges the patient-therapist privilege. "Unless otherwise provided, in all judicial . . . proceedings, a patient or the patient's authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing [c]ommunications relating to diagnosis or treatment of the patient; or [a]ny information that by its nature would show the existence of a medical record of a diagnosis or treatment." Md. Code (1973, 2013 (Repl. Vol., 2018 Supp.), Courts & Judicial Proceedings, § 9-109(b)(1)–(2). "The privilege belongs to the patient to assert, not to the psychiatrist [or psychologist]." *Eiler v. State*, 63 Md. App. 439, 445 n. 6, 492 A.2d 1320, 1322 (1985) (citing *Shaw v. Glickman*, 45 Md. App. 718, 415 A.2d 625, *cert. denied*, 288 Md. 742 (1980)); *see also Ali v. State*, 199 Md. App. 204, 224, 21 A.3d 140, 152 (2011). In this case, neither Brother Holmes nor his personal representative or other person in interest[5]

---

[5] A "person in interest" means an adult on whom a health care provider maintains a medical record; a person authorized to consent to health care for an adult consistent with

9

asserted the privilege to prevent the disclosure of his mental health records with SLI. Thus,

the records were not privileged from disclosure.[6]

## II. Did the circuit court err in ordering Brother Holmes' entire mental health record be filed under seal to the Massachusetts Court?

SLI argues the circuit court erred in ordering Brother Holmes' entire mental health

record be produced under seal to the Massachusetts Court for that court's determination as

to what portion of the records were relevant to the Massachusetts Action and should then

be released to the parties. It contends that, pursuant to the Act, the circuit court was

required to order the release of only that portion of the mental health records that it deemed

relevant to the Massachusetts Action and no more. Conversely, Jones asserts the circuit

---

the authority granted; a duly appointed personal representative of a deceased person; a minor, if the medical record concerns treatment to which the minor has the right to consent and has consented; or an attorney appointed in writing by a person listed previously. H.G. § 4-301(m).

[6] We recognize that Brother Holmes, or a party in interest, may argue against disclosure based on his constitutional right to privacy in his medical records. *See Dr. K. v. State Bd. of Physician Quality Assur.*, 98 Md. App. 103, 112, 632 A.2d 453, 457 (1993) (holding patient had right to privacy in her medical psychiatric records). However, "Maryland appellate courts adhere[] to the established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground." *Comptroller of the Treasury v. Zorzit*, 221 Md. App. 274, 308, 108 A.3d 581, 601 (2015) (quoting *McCarter v. State*, 363 Md. 705, 712, 770 A.2d 195, 199 (2001) (internal quotations omitted) (brackets in original). "The 'strong and established policy is to decide constitutional issues only when necessary.'" *Id.* (quoting *VNA Hospice of Md. v. Dep't of Health & Mental Hygiene*, 406 Md. 584, 604, 961 A.2d 557, 569 (2008)). Accordingly, because no party with the requisite standing advances such an argument in this case, we decline to engage in any discussion on the issue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2134 (1992) (requiring plaintiff to have suffered an "injury in fact"—an invasion of a legally protected interest—to have standing to bring cause of action).

court was correct in ordering the mental health records be produced in full under seal to the Massachusetts Court for its determination as to the records to be released because that court more thoroughly understands the aspects of the case and, thus, the interests of judicial economy were served.

The Act provides, "[w]hen a medical record developed in connection with the provision of mental health services is disclosed without the authorization of a person in interest, only the information in the record relevant to the purpose for which disclosure is sought may be released." H.G. § 4-307(c). Thus, while SLI was required to produce the mental health records pursuant to the circuit court's order, because neither Brother Holmes nor his personal representative authorized the disclosure, the circuit court may only require release of that portion of the records relevant to the Massachusetts Action. Accordingly, it was necessary for the circuit court to review and determine what portion of the mental health records was relevant to the Massachusetts Action and what was not.

**III.     How does a Maryland trial court determine what confidential information is to be released when requested in discovery?**

SLI claims the circuit court was required to conduct an in-camera review of Brother Holmes' mental health records to determine what portion thereof was relevant to the Massachusetts Action and should thereby be produced in discovery. We agree.

In-camera review is a procedure often used by trial courts to review privileged or confidential information to determine whether that information is subject to discovery by another party. *Zaal v. State*, 326 Md. 54, 88, 602 A.2d 1247, 1264 (1992) (holding in-camera review was appropriate to determine discoverability of victim's educational

11

records); s*ee also Reynolds v. State*, 98 Md. App. 348, 368, 633 A.2d 455, 464 (1993) (holding in-camera review by the trial court was appropriate to determine whether patient's privileged hospital records were subject to discovery by defendant). In *Zaal v. State*, *supra*, the Court of Appeals explained the process of in-camera review and the trial court's role, stating:

> In cases in which access to confidential and/or sensitive records is sought by a [party] and which will be resolved based on credibility considerations, because of which, the trial court determines the 'need to inspect' threshold has been crossed, the court may elect to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone, as officers of the court, subject to such restrictions as the court requires to protect the records' confidentiality . . .

> In any case, when the court reviews the records alone, it must approach its task cognizant of the fact that it is not an advocate and, in most instances, will not, and, indeed, cannot be expected, to discern all the nuances or subtleties which may render an innocuous bit of information relevant to [a claim or defense]. Thus the court's review is not to determine whether, and, if so, what, is 'directly admissible;' rather, it is to exclude from the parties' review material that could not, in anyone's imagination, properly be used in [a claim or defense] or lead to the discovery of usable evidence. Only when the records are not even arguably relevant and usable should the court deny the [party] total access to the records . . .

> The trial court's review should not only be aimed at discovering evidence directly admissible but also that which is usable for impeachment purposes, or that which would lead to such evidence.

326 Md. at 87–88, 602 A.2d at 1264. "It is for the trial judge, not for the patient or the health care provider, to determine what records will be reviewed." *Reynolds*, 98 Md. App. at 368–69, 633 A.2d at 464.

During in-camera review of the mental health records, the trial court must determine what portion of the records is relevant to the Massachusetts Action. "The records that are

reviewed but 'are not even arguably relevant and usable' shall . . . be sealed[.]" *Id.* at 369, 633 A.2d at 465. Those that are determined to be 'relevant and usable' shall, ordinarily, be "revealed to counsel in their roles as officers of the court." *Id.* at 367, 633 A.2d at 465. However, in this case, we believe it appropriate that the circuit court order the portion of Brother Holmes' mental health records deemed relevant to the Massachusetts Action be produced under seal to the Massachusetts Court for that court's determination as to what should be released to counsel.

For the foregoing reasons, we reverse the decision of the circuit court and remand this case for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND THE CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**